OPINION
This timely appeal arises from a Judgment Entry of the Mahoning County Court of Common Pleas which suspended Appellant's visitation rights with his three minor children. For the following reasons, we affirm the judgment of the trial court.
Appellant, Daniel T. Nichol, and Appellee, Anna D. Jannetti, F.K.A. Anna D. Nichol, were married in Mahoning County on April 7, 1979. Three children were born of the marriage: Jason Daxx Nichol, born April 1, 1981; Deanna Danielle Nichol, born August 23, 1984; and Aaron Dominic Nichol, born April 28, 1986.
On June 13, 1991, the marriage was dissolved by decree of the Court of Common Pleas of Mahoning County, Domestic Relations Division. The original Decree named the Appellee as residential parent and granted the father visitation rights on weekends and for six weeks during the summer.
On September 12, 1995, Appellee filed a Motion to Suspend Companionship. Appellee had stopped visitation with Appellant as of July of 1995. On September 29, 1995, Appellant filed a Motion for Citation and Finding of Contempt against Appellee for failure to comply with court-ordered visitation. Over the next two years the trial court held numerous magistrate's hearings on both motions.
On June 19, 1997, the magistrate filed his recommendation in the matter. The magistrate recommended overruling Appellant's contempt motion against Appellee and also recommended that all visitation with Jason be suspended, but that Appellee's request to suspend Appellant's visitation be overruled with respect to Deanna and Aaron. The magistrate recommended, however, that Appellant not be allowed visitation until both parties attend counseling and further conditioned Appellant's future visitation rights on changes in Appellant's behavior concerning alcohol consumption, public displays of affection toward girlfriends and his means of punishing the children. A review hearing was set for August 13, 1997.
On July 3, 1997, Appellant filed objections to the June 19th Magistrate's Report. On August 25, 1997, the trial court filed a Journal Entry which was signed on August 22, 1997 allowing Appellant to have visitation with the children on August 24 and 31, 1997. On September 18, 1997, the trial court filed another Journal Entry allowing Appellant supervised visitation with Deanna and Aaron on subsequent Sundays until further order.
On October 29, 1997, the trial court filed a Judgment Entry which adopted in full the Magistrate's Report of June 19, 1997. On November 26, 1997 Appellant filed his notice of appeal. His first assignment of error alleges:
 "THE TRAIL [SIC] COURT ERRED IN SUSPENDING DEFENDANT'S-APPELLANT'S COMPANIONSHIP WITH MINOR CHILDREN JASON, DEANNA, AND AARON NICHOL, AS IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO THE LAW."
Appellant argues that the right of the noncustodial parent to visit with his children should be denied only under extraordinary circumstances. He asserts that visitation ordinarily will be denied only if the noncustodial parent is unfit or if visitation would cause harm to the children. Appellant contends that any reduction of visitation privileges should be no more than is necessary to serve the best interests of the child. He argues that the relationship between a noncustodial parent and a child should not be totally severed unless the child is old enough to independently decide to discontinue all visitation. According to Appellant, even where a child expresses an unwillingness to participate in visitation, the court must inquire into the reasons for that unwillingness in order to determine if the child is making a truly independent decision.
Appellant contends that the evidence presented in over two years of hearings did not support Appellee's burden to prove that he was either unfit or that continued visitation would cause harm to the children, and therefore, his visitation should not have been suspended either permanently or temporarily with any of the three children. Based on the record before us, we have determined that this assignment of error is without merit.
We begin by noting that a trial court has wide discretion in deciding visitation matters and thus, these are reviewed under an abuse of discretion standard. Booth v. Booth (1989),44 Ohio St.3d 142, 144. To find an abuse of discretion, we must determine that the trial court's attitude was unreasonable, arbitrary or unconscionable. Id.
In Braatz v. Braatz (1999), 85 Ohio St.3d 40, the Ohio Supreme Court recently clarified what standards must be used when a court is modifying visitation rights. Modification of visitation is governed by R.C. § 3109.051. Braatz v. Braatz, 44-45. A trial court must consider the fifteen factors listed in R.C. § 3109.051 (D) and has the discretion to then determine that a change in visitation is in the best interests of the child.Braatz v. Braatz, 45.
R.C. § 3109.051 (D) states in relevant part:
 "In determining whether to grant companionship or visitation rights to a parent * * * the court shall consider all of the following factors:
 "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *
 "(2) The geographical location of the residence of each parent and the distance between those residences * * *
 "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
"(4) The age of the child;
 "(5) The child's adjustment to home, school, and community;
 "(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to visitation by the parent who is not the residential parent * * * as to a specific visitation schedule, or as to other visitation matters, the wishes and concerns of the child, as expressed to the court;
"(7) The health and safety of the child;
 "(8) The amount of time that will be available for the child to spend with siblings;
"(9) The mental and physical health of all parties;
 "(10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights * * *
 "(11) In relation to visitation by a parent, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
"* * *
 "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to visitation in accordance with an order of the court;
 "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
"(15) Any other factor in the best interest of the child."
We note that in his recommendation, the magistrate expressly stated his findings with respect to each of the above factors. Therefore, there is no merit to an argument based on a failure to consider relevant statutory factors.
Appellant argues that a noncustodial parent's visitation rights may be suspended completely only if that parent is determined to be unfit or if there is a significant risk of serious physical or emotional harm to the child. This position understates the court's authority over visitation determinations. R.C. § 3109.051 (A) grants the trial court broad authority to restrict visitation. This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child.
The court took over two years to make a final determination on Appellee's Motion to Suspend Visitation filed on September 12, 1995. The court heard extensive testimony from a variety of psychologists, all three children, the children's guardian ad litem, the parties themselves and from relatives of the parties. Much of the evidence centered around the emotional condition of the children, their wishes regarding visiting with Appellant and whether Appellant posed a danger to his children. The ages of the children were also a significant factor in this matter. When the court rendered its final judgment on October 29, 1997, Jason was 16, Deanna was 14 and Aaron was 11.
The trial court determined that Appellant's visitation rights with Jason should be suspended completely. The trial court made a separate determination as to Appellant's visitation rights with Deanna and Aaron. Appellant incorrectly characterizes the court's ruling concerning Deanna and Aaron as a complete suspension of visitation rights. The magistrate's decision adopted by the court order clearly states at page 22, "* * * that the [Appellee's] Motion to Suspend Companionship, as it relates to the children, Deanna Danielle Nichol and Aaron Dominic Nichol, be overruled." The trial court determined that Appellant should continue to have visitation with Deanna and Aaron, albeit conditioned on the parties' attending counseling as specified in the magistrate's decision. Because the trial court actually granted the relief that Appellant requests on appeal with respect to Deanna and Aaron, Appellant's argument appears moot.
With respect to Jason, the trial court permanently suspended Appellant's visitation rights. The remaining issue is whether the trial court abused its discretion in determining that the suspension of visitation with Jason was justified.
During the direct examination of witness Dr. Lynn Ross DiMarzio a letter written by Jason to Appellant was introduced into evidence. This letter contained Jason's statements as to why he did not want to see Appellant anymore. In this letter Jason calls Appellant a "male prostitute," accuses him of drinking and driving, not paying child support, constantly using foul language and of threatening Appellee. The letter states, "You've threatened my mother many times, which if I was not a Christian I would have killed you by now!" It also contains a statement that if Appellant ever hit Jason again, Jason would fight back. Dr. DiMarzio opined that it would be volatile and dangerous to have Jason visit with Appellant. (Tr. vol. 1, 24.)
Jason himself testified that he was physically abused by his father. (Tr. vol. 2, 119.) He also testified that he did not want to continue visitation with Appellant, and that Appellee had not influenced him in this matter. (Tr. vol. 2, 123.)
Dr. Michael Stern, a pediatric psychologist, also testified about Jason's feelings toward Appellant. He testified that Jason's anger was based on many factors. Some of those factors were that Appellant had abused Appellee, had affairs with a variety of women and that Appellant had sexual intercourse with one of his girlfriends while Jason and the other children were present. (Tr. vol. 2, 76.) Dr. Stern testified that the hostility between Jason and Appellant was so great during a face to face meeting that there was, "no room to negotiate." (Tr. vol. 2, 79.) Dr. Stern also testified that Appellant was determined to handle any disrespect from Jason with physical discipline. (Tr. vol. 2, 84.)
Jason was sixteen-years-old at the time that the trial court ordered the suspension of visitation. Age is a critical factor when evaluating a child's reluctance in visiting a noncustodial parent. Smith v. Smith (1980), 70 Ohio App.2d 87, paragraph two of the syllabus. Jason's extreme anger toward his father, whether completely justified or not, was well-documented in this case. The trial court also had evidence that Appellant would respond to Jason's anger by using physical violence. Jason also clearly expressed his desire to end all visitation with Appellant. These factors convince us that the trial court did not abuse its discretion in taking the extraordinary step of terminating Appellant's visitation rights with Jason. Nevertheless, we must now note that, as Jason has reached the age of majority, the matter would be moot. Accordingly, we overrule Appellant's first assignment of error.
Appellant's second assignment of error alleges:
 "TRAIL [SIC] COURT ERRED IN RECOMMENDING THAT PLAINTIFF'S MOTION TO SUSPEND COMPANIONSHIP WITH MINOR CHILDREN JASON, DEANNA, AND AARON NICHOL, BE OVERRULED, BUT THAN [SIC] FAILED TO ORDER A JUST AND REASONABLE VISITATION SCHEDULE."
Appellant argues that the magistrate's decision, which was adopted by the trial court, does not provide him with any meaningful visitation with Deanna and Aaron, even though the court purported to overrule Appellee's Motion to Suspend Visitation with regard to the two children. Appellant argues that he has been without visitation since July 1995, with limited exceptions. Appellant does not question the authority of the trial court to order the parties to attend counseling. Appellant argues, instead, that it is an abuse of the trial court's discretion to require counseling without allowing any form of visitation, even supervised visitation, in the interim. Appellant requests that this court reverse the order of the trial court and immediately allow him to resume his visitation, supervised if necessary, with Deanna and Aaron. Once again, based on the record before us we determine that Appellant's assignment of error is without merit.
We must once again note that visitation matters are reviewed under an abuse of discretion standard and that in order to reverse the trial court we must find the court's attitude was unreasonable, arbitrary or unconscionable. Booth v. Booth,supra, 144.
In his third recommendation, the magistrate stated in relevant part:
 "The Magistrate further recommends that the [Appellee's] Motion for Suspension of Companionship, as it relates to children, Deanna Danielle Nichol and Aaron Dominic Nichol, be overruled. In that respect the Magistrate recommends that the [Appellant] continue to have visitation/companionship rights with such children. However, such visitation/companionship rights will be temporarily suspended until such time as both parties and both of such minor children engage in psychological counseling through Dr. John C. Thorn * * * Both parties are to immediately contact Dr. Thorn for an initial "assessment * * *"
R.C. § 3109.051 (A) grants broad authority to the trial court in restricting visitation rights, setting conditions, or denying visitation altogether. In the present case, the trial court adopted the recommendation that Appellant be permitted conditional visitation with his two youngest children. The condition that the parties engage in counseling was relevant to determining the best visitation scenario for the children. As we delineated earlier, R.C. § 3109.051 (D) provides numerous factors which the court must consider when crafting visitation orders so that they are in the best interest of the children. R.C. § 3109.051 (D) (15) permits the court to consider any factor which is in the best interest of the children. The voluminous testimony which reveals evidence of tension between Appellant and his children supports that visitation be contingent upon counseling. Given the broad discretion of the court, it is not unreasonable to temporarily suspend visitation until the relevant conditions can be effectuated. We find no abuse of discretion in this, and overrule Appellant's second assignment of error.
Appellant also raises a third issue, although not expressly stated as an assignment of error. He contends that the trial court erred in overruling his motion to hold Appellee in contempt for disobeying a visitation order.
Appellant argues that Appellee unilaterally ended his visitation in July 1995. He contends that the only plausible reason Appellee gave to justify her action was that the children said they did not want to continue to visit with Appellant. Appellant argues that the residential parent cannot acquiesce to a child's wishes to end visitation unless the child can affirmatively and independently decide to completely discontinue visitation. Seeing no basis for Appellee's disobedience of the visitation order, Appellant concludes that Appellee should have been held in contempt and that failure to do so was error in the trial court.
We will not overrule a trial court's ruling on a motion for contempt absent an abuse of discretion. State ex rel. Ventronev. Birkel (1981), 65 Ohio St.2d 10, 11. An abuse of discretion connotes more than an error of law or judgment; it implies an attitude that is, "unreasonable, arbitrary or unconscionable."Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219; Booth v.Booth, supra.
In the present case, we cannot find an abuse of discretion in the trial court. At paragraph 64 of his recommendation, the magistrate stated that there was ample evidence that Appellee had not complied with visitation. However, the magistrate stated that the evidence also indicated that Appellee had advised and encouraged the children to participate in visitation. The magistrate stated in paragraph 64:
 "Though [Appellee] may have allowed the children at "a prior point to decide against continued companionship her actions do not warrant a contempt finding. The children's testimony, and the vast testimony from psychologists, evidenced the extreme tension between the children and the father thereby making it nearly impossible to continue an amicable visitation/companionship between the father and the children. In any event the Magistrate finds that the significant issue before the Court is how to continue the father/child relationship and as such the contempt issue pales in comparison."
Based on the record before us, we agree with the magistrate's characterization of the situation. We therefore find no abuse of discretion in the trial court's denial of Appellant's motion and conclude that Appellant's argument lacks merit.
Therefore, we affirm the judgment of the trial court adopting the magistrate's decision in full.
Cox, P.J., and Donofrio, J., concurs.
APPROVED:
 _____________________________________ CHERYL L. WAITE, JUDGE