BRAATZ, APPELLEE, *v.* BRAATZ, APPELLANT.

[Cite as *Braatz v. Braatz* (1999), 85 Ohio St.3d 40.]

(No. 97–2566—Submitted December 1, 1998—Decided March 24, 1999.)

42

*Marc E. Dann,* for appellee.

*Louis E. Katz,* for appellant.

ALICE ROBIE RESNICK, J.   The questions that have been certified for our consideration are (1) "Whether a moving party must demonstrate a change of circumstances for a trial court to modify its prior judgment regarding visitation? * * * At issue is whether R.C. 3109.04 or R.C. 3109.051 is applicable to a modification of visitation," and (2) "Whether a trial court is required to set forth findings of fact and conclusions of law upon timely request in proceedings involving a modification of visitation."

R.C. 3109.04 provides in pertinent part:

"(E)(1)(a) The court shall not modify a prior decree *allocating parental rights and responsibilities* for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child.

" * * *

"(F)(1) In determining the best interest of a child pursuant to this section, whether on an original decree allocating *parental rights and responsibilities* for the care of children or a modification of a decree allocating those *rights and responsibilities,* the court shall consider all relevant factors, including, but not limited to: [a list of factors to be considered]."   (Emphasis added.)

R.C. 3109.051 provides in pertinent part:

"(A) If a divorce, dissolution, legal separation, or annulment proceeding involves a child and if the court has not issued a shared parenting decree, the court shall consider any mediation report filed pursuant to section 3109.052 of the Revised Code and, in accordance with division (C) of this section, shall make a just and reasonable order or decree permitting each parent who is not the residential parent to *visit* the child at the time and under the conditions that the court directs, unless the court determines that it would not be in the best interest

of the child to permit that parent to *visit* the child and includes in the journal its findings of fact and conclusions of law. Whenever possible, the order or decree permitting the *visitation* shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child. * * * " (Emphasis added.)

In 1986, this court held that "[m]odification of visitation rights is governed by R.C. 3109.05 and the specific rules for determining when a court may modify a custody decree are not equally applicable to modification of visitation rights." *Appleby v. Appleby* (1986), 24 Ohio St.3d 39, 24 OBR 81, 492 N.E.2d 831, syllabus. The court explained that "R.C. 3109.04 provides specific guidelines for a trial court to follow in determining whether a prior custody decree should be modified. That section is silent as to rights of visitation. R.C. 3109.05 governs visitation rights." *Id.* at 40, 24 OBR at 82, 492 N.E.2d at 833.

Since *Appleby* was decided, the General Assembly has substantially amended both statutes, but the reasoning used by this court in *Appleby* still applies. In 1990, the General Assembly, *inter alia*, amended R.C. 3109.04(B)(1) to add language allowing a trial court to modify a *custody* decree if it finds that the *custodial* parent has been denying the other parent access to the children. 143 Ohio Laws, Part IV, 5965 (Am.Sub.H.B. No. 591). In 1991, the General Assembly removed the mention of alimony in R.C. 3109.04(A) and inserted the term "legal separation." 143 Ohio Laws, Part III, 5461 (Am.Sub.H.B. No. 514). Also, in 1991, the General Assembly overhauled R.C. 3109.04, which included the filing of "shared parenting" plans and the change of the terms "custody and control" to "parental rights and responsibilities." 143 Ohio Laws, Part I, 111–126 (Am.Sub. S.B. No. 3). In 1993, Am.Sub.S.B. No. 115 amended R.C. 3109.04(D)(1) to refer to plural "parents." 145 Ohio Laws, Part I, 1045. And in 1994, the General Assembly, *inter alia*, made changes to the language of R.C. 3109.04(E) governing the modification of shared parenting plans. 145 Ohio Laws, Part III, 5988–5989 (Am.Sub.H.B. No. 415). Although the language used in the statute has changed since this court decided *Appleby*, the statute continues to govern custody rights, now referred to as "parental rights and responsibilities." Division (A) sets out the procedures and standards to be used by the trial court when allocating the care of the children. Visitation rights are not addressed in R.C. 3109.04, except as to determining the best interest of the child in order to allocate parental rights and responsibilities.[1] Cf. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, 1162 (The intent of R.C. 3109.04 is " 'to provide some stability to the

---

1. One factor the court shall consider when determining the best interest of a child is whether "[t]he parent [is] more likely to honor and facilitate visitation and companionship rights approved by the court." R.C. 3109.04(F)(1)(f).

custodial status of the children,' " quoting *Wyss v. Wyss* [1982], 3 Ohio App.3d 412, 416, 3 OBR 479, 483, 445 N.E.2d 1153, 1157.).

R.C. 3109.051, on the other hand, clearly governs decisions as to visitation. In 1990, the General Assembly eliminated any mention of visitation in R.C. 3109.05 and adopted R.C. 3109.051, which specifically and in detail addresses the granting of parental *visitation* rights. 143 Ohio Laws, Part II, 1964–1970 (Am.Sub.H.B. No. 15). In the following year, the General Assembly substantially amended R.C. 3109.051, and in particular division (A), to add the text regarding mediation reports and that the "order or decree permitting the visitation shall ensure the opportunity for both parents to have frequent and continuing contact with the child, unless frequent and continuing contact by either parent with the child would not be in the best interest of the child." 143 Ohio Laws, Part I, 128–129 (Am.Sub.S.B. No. 3). Thus, since 1990, R.C. 3109.051 is the applicable statute for determining visitation.

In *In re Gibson* (1991), 61 Ohio St.3d 168, 171, 573 N.E.2d 1074, 1076, we explained the difference between custody and visitation:

" 'Visitation' and 'custody' are related but distinct legal concepts. 'Custody' resides in the party or parties who have the right to ultimate legal and physical control of a child. 'Visitation' resides in a noncustodial party and encompasses that party's right to visit the child. See former R.C. 3109.05(B) (court may allow 'parent who is deprived of the care, custody, and control of the children to visit them * * *'). In other words, 'visitation' is granted to someone who does not have 'custody.' Although a party exercising visitation rights might gain temporary physical control over the child for that purpose, such control does not constitute 'custody' because the legal authority to make fundamental decisions about the child's welfare remains with the custodial party and because the child eventually must be returned to the more permanent setting provided by that party. See *Patrick v. Patrick* (1962), 17 Wis.2d 434, 438, 117 N.W.2d 256, 259 (party having visitation does 'not have custody during * * * visits, but only such obligation and authority as are practical necessities during such visits.'); *Westrate v. Westrate* (App.1985), 124 Wis.2d 244, 248, 369 N.W.2d 165, 168 ('visitation differs from custody because the noncustodial parent and child do not live together as a single family unit'). * * * "

R.C. 3109.04 governs agreements allocating "parental rights and responsibilities," or as we stated in *Gibson*, "the right to ultimate legal and physical control of a child." The section, except as noted above, remains silent as to rights of visitation, or "*temporary* physical control." (Emphasis added.) *Gibson* at 171, 573 N.E.2d at 1076. R.C. 3109.051 governs visitation rights. Thus, the rationale of *Appleby* applies to the statutes today. We hold that modification of visitation rights is governed by R.C. 3109.051, and that the specific rules for determining

when a court may modify a custody decree as set forth in R.C. 3109.04 are not equally applicable to modification of visitation rights. Accord *Appleby*. Moreover, appellee need make no showing that there has been a change in circumstances in order for the court to revise his rights to visitation. Pursuant to R.C. 3109.051(D), however, the trial court shall consider the fifteen factors enumerated therein, and in its sound discretion determine visitation that is in the best interest of the child. See, generally, *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030; *In re Whitaker* (1988), 36 Ohio St.3d 213, 217, 522 N.E.2d 563, 568; *Appleby*, 24 Ohio St.3d at 41, 24 OBR at 82, 492 N.E.2d at 832.

In its order reinstating the visitation schedule as set forth in the original divorce decree, the trial court, without explanation, stated that it found appellee's objections to the magistrate's recommended decision to be without merit and appellant's objections to be well taken. Without further explanation, we must assume that the trial court agreed with the argument that appellant put forth in her objections, which was that appellee did not meet his burden of proving that changing the existing visitation schedule was "in the best interest of the child." As we held above, when a party requests a change in visitation, the trial court must consider the factors set forth in R.C. 3109.051(D) and then determine visitation that is in the best interest of the child. There is no evidence in the record below to suggest that the trial court did so when it reviewed the magistrate's proposed decision.

The better practice, as required by R.C. 3109.051(F)(1),[2] is for the trial court, upon request by a party, to file findings of fact and conclusions of law. We thus affirm the decision of the court of appeals and adopt its order.

Upon remand, the trial court should enter its findings of fact and conclusions of the law as to its decision. These findings and conclusions should take into account the factors set forth in R.C. 3109.051(D). Alternatively, we hereby order that the trial court may vacate its previous order of November 30, 1995, and order a new hearing as to appellee's motion for a change in visitation.

*Judgment affirmed.*

DOUGLAS, F.E. SWEENEY, PFEIFER and LUNDBERG STRATTON, JJ., concur.

MOYER, C.J., and COOK, J., concur in part and dissent in part.

---

2. R.C. 3109.051(F)(1) states:

"If the court, pursuant to division (A) of this section, denies visitation to a parent who is not the residential parent or denies a motion for reasonable companionship or visitation rights filed under division (B) of this section and the parent or movant files a written request for findings of fact and conclusions of law, the court shall state in writing its findings of fact and conclusions of law in accordance with Civil Rule 52."

MOYER, C.J., concurring in part and dissenting in part. Upon a close reading of the current statutes addressing visitation and custody issues in divorce proceedings, I find no requirement that the trial court find a change in circumstances before it may modify a parental visitation order, unless the modification involves a change in the residential parent designation or a change to a shared parenting agreement.

I respectfully disagree with the majority's conclusion that, following the 1990 amendments to R.C. 3109.04 and 3109.05, *Appleby v. Appleby* (1986), 24 Ohio St.3d 39, 24 OBR 81, 492 N.E.2d 831, is still controlling law. I also disagree with the conclusion that R.C. 3109.051 now governs the modification of parental visitation rights. However, I do agree that there is no statutory requirement that a court find a change in circumstance before it may modify a visitation order, unless the modification will change the residential parent designation or will alter a shared parenting decree.

Though this case was accepted as a certified conflict, I do not completely agree with the interpretations put forth by either of the conflicting appellate courts. While I agree with the holding of the Ninth District Court of Appeals in *Jacobs v. Jacobs* (1995), 102 Ohio App.3d 568, 657 N.E.2d 580, insofar as it states that R.C. 3109.04 governs the modification of visitation orders, I disagree that a change in circumstances is a prerequisite to all visitation order modifications under that statute.

## I.   Criteria for Modifying Prior Visitation Orders

### A.   Statutory Review

*R.C. 3109.051*:

In the absence of a shared parenting decree, R.C. 3109.051(A) sets forth the guidelines a court should follow when providing visitation rights to non-residential parents in a divorce, dissolution, legal separation, or annulment proceeding. It requires the court, in its final decree, to issue "a specific schedule of visitation," which provides the non-residential parent, where possible, with an opportunity for frequent and continuing contact with the child, unless it would not be in the best interest of the child to do so. This section leaves the trial court with the discretion to apply that standard in each case. The statute does not authorize the trial court to modify a "final decree [providing] a specific schedule of visitation."

R.C. 3109.051(B) provides the guidelines for deciding whether and under what terms to grant an order or decree allowing visitation by relatives and other persons, "other than a parent." This section addresses requests for visitation made either at the time of the original divorce, dissolution, legal separation,

annulment, or child support proceeding, or at any time after the original decree or final order has been issued.

Subsection (B)(1) states that "the court may grant reasonable companionship or visitation rights to any grandparent, any person related to the child by consanguinity or affinity, or any other person other than a parent," provided certain requirements are met.

An argument could be made that this section, under its plain terms, applies to parents because they are "related to the child by consanguinity," and the limiting phrase "other than a parent" could be read to modify only the phrase "any other person," which immediately precedes it. However, when the words are read in context, that is not a persuasive argument. I read the limiting phrase "other than a parent" to apply to the entire preceding list, including "any person related to the child by consanguinity or affinity." To read this section otherwise would create an internal inconsistency in the statute. Because R.C. 3109.051(A) directly addresses parental visitation rights and commands that the court "shall" permit a non-residential parent to visit the child under the circumstances required, it does not follow that the permissive language of section (B) would be equally applicable to parents. Furthermore, the legislative history of this statute shows that R.C. 3109.051 was enacted specifically to allow grandparents and other relatives to have visitation rights. Title, Am.Sub.H.B. No. 15, 143 Ohio Laws, Part II, 1964.

Additionally in the opening paragraph of section (D), in subsections (D)(1) and (D)(6), and in section (E) of R.C. 3109.051, the statute distinguishes between parents, and relatives or other persons. In subsection (F)(1), the statute distinguishes between denying visitation to non-residential parents and denying a motion made under section (B). If relatives under section (B) were meant to include parents, or if section (B) applied in any way to parents, there would be no need for this redundancy in subsequent sections of the statute.

Even if I could accept that section (B), insofar as it does not conflict with section (A), could apply to visitation orders involving parents, the terms of subsection (B)(2) do not clearly apply to the modification of preexisting visitation rights. Subsection (B)(2) provides that if no motion for visitation by the applicable parties was filed during the pendency of the divorce, dissolution, legal separation annulment, or child support proceeding, or if a motion was filed and now circumstances have changed, such a motion may still be filed after a decree or final order has been issued. It is unclear, however, whether this was meant to apply when a visitation order had previously been granted, or only if the original motion for visitation had been denied.

R.C. 3109.051(B)(2) expressly authorizes only those motions allowed under subsection (B)(1). R.C. 3109.051(B)(1), in turn, provides that the court "may

grant reasonable companionship or visitation rights." The *Jacobs* court noted that terms such as "grant" and "establish" ordinarily connote original determinations of entitlement, not subsequent revisions of rights already conferred. Therefore, I find some support for the proposition that the provisions of R.C. 3109.051(B)(2) are meant to provide a means of establishing visitation where no order currently exists and do not necessarily provide for modification of preexisting visitation rights. Although I believe that section (B) in its entirely does not apply to parents, I note this as another example of ambiguous language and general lack of clarity in the legislation.

*R.C. 3109.04:*

R.C. 3109.04 purports to apply to any proceeding pertaining to the allocation of parental rights and responsibilities. This broader language, on its face, would appear to include modification proceedings as well as original actions. The application of this statute is controlled by a determination of whether visitation orders are an allocation of "parental rights and responsibilities" under the statute.

The majority reads "parental rights and responsibilities" as synonymous with "custody and control." Such a reading is not supported by the statute or by the common usage of these terms. The term "parental rights and responsibilities" is broader than the term "custody and control" as it is generally and statutorily defined, and does include parental visitation and companionship rights.

Unfortunately, the statutes mix terms without consistency, making it difficult to glean a clear intent from the General Assembly. The fact that there are separate statutes dealing with visitation rights and the allocation of "parental rights and responsibilities" is only the beginning of the confusion. The repeated emphasis in R.C. 3109.051 on declaring visitation and companionship a "right" of parents and the absence of any definition in R.C. 3109.04 of what "parental rights and responsibilities" includes further complicate the issue. Confusion may also arise from the juxtaposition in R.C. 3109.04 of a situation involving a residential or custodial parent, against a situation in which the parties have agreed to a shared parenting order. In addition, the entire chapter is replete with inconsistencies in the terminology used and how terms are defined or used.

In R.C. 3105.21, the General Assembly states that an order for the "disposition, care, and maintenance of the children" shall be made in the best interest of the child and in accordance with R.C. 3109.04. This phrase is not defined and is not repeated anywhere in R.C. 3109.04. R.C. 3109.04 interchanges the terms "residential parent," "custodial parent," "a parent who is granted the care, custody, and control of a child," "legal custodian," and "a parent who primarily is allocated the parental rights and responsibilities for the care of a child."

R.C. 3105.65, the section that authorizes continuing jurisdiction in dissolution cases, lists "allocation of parental rights and responsibilities," "designation of a residential parent and legal custodian," and "visitation" separately, indicating that none of these terms is synonymous. In R.C. 3109.052(B), there is also an unexplained distinction made between an allocation of "parental rights and responsibilities" and the establishment of a "specific schedule of visitation." However, in R.C. 3109.21(B), setting forth definitions for terms as used in R.C. 3109.21 to 3109.37, the General Assembly in the definition of "parenting determination" includes visitation rights as part of both the allocation of "parental rights and responsibilities" and "the custody of a child." This definition could be read to indicate a distinction between "parental rights and responsibilities" and custody, and/or as rendering the distinction moot in regard to visitation, because visitation rights fall under the scope of both terms in this definition.

Further, the General Assembly speaks separately of "parental rights," "visitation rights," "companionship * * * rights," and a "right * * * to continuing contact," without making any attempt to distinguish between them or to define them. See, *e.g.*, R.C. 3109.04(A)(1); 3109.051(A). These are but a few examples of the inconsistencies and ambiguities in the statutes that address child/parent relationships in the context of divorce, dissolution, legal separation, and child support. Despite this lack of clarity and the internal inconsistencies among the statutes, I believe that the statutes provide greater support for the conclusion that "visitation" is a parental right falling within the scope of R.C. 3109.04.

Throughout the statutory scheme, visitation and companionship are referred to as "rights" of the parent. See, *e.g.*, R.C. 3109.051(A), (B), (C), (D), (E), (F), (G)(2), (G)(3), and (I). Further, other provisions of the Revised Code distinguish between "parental rights and responsibilities" and the determination of residential parent status or legal custodian. See, *e.g.*, R.C. 3109.03; 3105.65.

The definitional sections under R.C. 3109.04 do not specifically define "parental rights and responsibilities"; however, they imply that this term includes rights and responsibilities beyond "care, custody, and control" and beyond determination of the "residential parent and legal custodian." The latter terms are assigned to the parent with the *primary* allocation of rights and responsibilities, not the sole allocation of rights and responsibilities regarding the child. In R.C. 3109.04(A)(1), the General Assembly stated that in the absence of a shared parenting order, the court shall "allocate the parental rights and responsibilities for the care of the children primarily to one of the parents, designate that parent as the residential parent and the legal custodian of the child, and divide between the parents, the other rights and responsibilities for the care of the children, including * * * the right of the parent who is not the residential parent to have continuing contact with the children." This subsection assumes that there are

parental rights and responsibilities, including a right of continuing contact, that exist in addition to the right and responsibility of being the residential parent or legal custodian. See R.C. 3109.04(K)(2) and (4). Therefore, "parental rights and responsibilities" is not synonymous with "custody and control" under the former statute, as the majority opinion asserts.

Though not specifically directed at either of the statutes at issue, elsewhere in R.C. Chapter 3109, "parenting determination" is defined as related to the allocation of "parental rights and responsibilities for the care of the child, including any designation of visitation rights." R.C. 3109.21(B). This would also lead to the conclusion that visitation rights are within the purview of "parental rights and responsibilities," and, as such, are governed by R.C. 3109.04.

Having determined that R.C. 3109.04 is broad enough to regulate visitation orders, we must look to whether this statute provides for the modification of such orders, and, if so, under what conditions.

There is no express authorization in R.C. 3109.04, or any other provision of R.C. Chapter 3109, providing the court with continuing jurisdiction to modify visitation orders in a divorce proceeding.[3] However, it is well established in Ohio common law that even absent an express statutory provision or a reservation of jurisdiction in the original decree, courts have continuing jurisdiction to modify matters relating to the custody, care, and support of minor children in divorce proceedings. *Hoffman v. Hoffman* (1864), 15 Ohio St. 427, 434; *Neil v. Neil* (1883), 38 Ohio St. 558; *Rogers v. Rogers* (1894), 51 Ohio St. 1, 4–5, 36 N.E. 310, 311; *Addams v. State ex rel. Hubbell* (1922), 104 Ohio St. 475, 135 N.E. 667; *Corbett v. Corbett* (1930), 123 Ohio St. 76, 78, 174 N.E. 10, 11; *Van Divort v. Van Divort* (1956), 165 Ohio St. 141, 59 O.O. 207, 134 N.E.2d 715.

Though the trial court has inherent jurisdiction to modify issues involving child custody and visitation in divorce proceedings, the common law provides no guidance as to the process for obtaining a modification. R.C. 3109.04 is the only statute that applies to the modification of parental visitation orders. In the absence of a shared parenting decree, there are two subsections that address the requirements for modification of a prior order of the court allocating parental rights and responsibilities (R.C. 3109.04[B][1] and [E] ), and one that applies to "any proceeding pertaining to the allocation" (R.C. 3109.04[A] ). Of these provisions, both R.C. 3109.04(A) and R.C. 3109(B)(1) require only that the court take into account the best interest of the child when making an allocation of parental

---

3. R.C. 3105.65 provides specific statutory authority for the court to maintain continuing jurisdiction to modify all matters pertaining to the allocation of "parental rights and responsibilities for the care of the children" and of "visitation" in the context of a voluntary dissolution. R.C. 3111.16 gives the court specific statutory continuing jurisdiction to modify or revoke orders under the parentage statutes. No corresponding authority is expressed in the context of a divorce proceeding.

rights and responsibilities. I believe these provisions govern the modification at issue in this case.

The other section that specifically addresses modifications in the absence of a shared parenting decree is R.C. 3109.04(E)(1)(a), which I believe the General Assembly intended only to apply to modifications that would change the residential parent designation. This section reads as follows:

"The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, his residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:

"(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.

"(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.

"(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."

It is clear that the General Assembly limited the application of this section to modifications that change the designation of a residential parent. To read this section otherwise would prevent consideration of any changes to the non-residential parent's circumstances, including any change in geographic location (moving closer to or further away from the child's main residence), any change in living arrangements (being able to provide appropriate accommodations not available at the time of the original order, or losing accommodations previously available), any change in work requirements or hours, benefiting from counseling or treatment programs, any new manifestation of an addiction to alcohol or drugs, or any other factors that would make a change in visitation appropriate and may affect the best interest of the child. The types of changed circumstances listed in the statute (when no shared parenting decree exists) refer only to changes in the circumstances of the child and the residential parent. It would seem that if this section were meant to apply to changes in visitation orders not affecting the residential status of the parents, then changes in the circumstances of the visiting parent would be included as a relevant and even mandatory consideration.

I would therefore hold that parental visitation orders are "parental rights and responsibilities," controlled by R.C. 3109.04, and that absent a proposed change in the residential parent designation or a shared parenting decree, R.C. 3109.04(B)(1) sets the standard for modification of such visitation orders. R.C. 3109.04(B)(1) requires only that the court take into account the best interest of the child. In determining the best interest of the child, the court shall consider all relevant factors, including but not limited to those enumerated under R.C. 3109.04(F).

## II. Findings of Fact and Conclusions of Law

I agree with the majority that upon remand, the trial court should enter its findings of fact and conclusions of law. This is required not by R.C. 3109.051, which is inapplicable under the facts of this case, but by Civ.R. 52 itself.

I would, therefore, affirm the court of appeals' reversal of the trial court judgment on different grounds and remand for further proceedings. Upon remand, I would order the trial court to enter its findings of fact and conclusions of law, taking into account the factors set forth in R.C. 3109.04(F)(1).

COOK, J., concurs in the foregoing opinion.