DECISION.
Plaintiffs-appellants Teri T. Bonfield and Shelly M. Zachritz appeal the trial court's judgment dismissing their petition for the allocation of parental rights and responsibilities for lack of jurisdiction.[1]
 FACTS AND PROCEEDINGS
Teri and Shelly are partners in a committed same-sex relationship and have resided together since 1988. During that time, Teri has adopted two children, Joseph and Jacob, and has given birth to three children, Nicholas, Matthew and Samantha, each of whom was conceived through anonymous artificial insemination.[2] Shelly actively participated in the adoptions and births of the five children with the understanding that she would "co-parent" them with Teri. Since the children's respective adoptions and births, Shelly has acted as their primary caregiver and has come to be seen by them as their "parent" in the same way as has Teri. Despite these circumstances, Shelly has no legally recognized rights or responsibilities with respect to the children. As a result, Shelly does not have equal access to the children's medical and school records, is unable to obtain medical care for the children, and would be prevented from obtaining medical insurance for them. Moreover, if Teri were to die, it is possible that Shelly's care and physical custody of the children would be interrupted for a time or would even be terminated altogether.
In an attempt to resolve these problems, Teri and Shelly sought to obtain a court order acknowledging their equal standing to parent the children. Accordingly, in March 1999, they filed a petition for the allocation of parental rights and responsibilities with the juvenile court in which they requested that the court "award them the legal status of co-custodians o[f] the children."[3]
At a hearing on the petition, a magistrate of the juvenile court expressed his concern as to whether he had jurisdiction to consider the matter. He noted that the language of R.C. 3109.04, which governs the allocation of parental rights and responsibilities and shared parenting, speaks in terms of "parents," and that the term "parent" typically includes only the biological or adoptive parent of a child. Accordingly, the magistrate questioned whether he had authority to approve a shared-parenting plan that would grant "parental" rights to someone who was neither a biological nor an adoptive parent of the children who were the subjects of the petition.
Teri and Shelly, however, urged the magistrate to recognize a broader definition of parent that would include a "psychological," "de facto," or "second parent" such as Shelly. The magistrate declined to do so, issuing in December 1999 a decision recommending that the petition be dismissed for lack of jurisdiction. After holding a hearing on Teri and Shelly's objections to the magistrate's decision, the trial court adopted the magistrate's decision and dismissed the petition.
Teri and Shelly have appealed the trial court's judgment to this court under appeal numbers C-000436 and C-000437. Although both notices of appeal challenge the judgment of the juvenile court entered in trial number F99-0567, appeal number C-000437 is filed under trial number F95-2007. Insofar as the judgment appealed from does not relate to F95-2007, the proceeding wherein Teri adopted Joseph and Jacob, the appeal from this case number is a nullity. Accordingly, we dismiss appeal number C-000437 and proceed under appeal number C-000436 only.
 ASSIGNMENTS OF ERROR
In the first of their two assignments of error, Teri and Shelly assert that the trial court erred in dismissing their petition for lack of jurisdiction. Although we conclude that Teri and Shelly are correct in arguing that the trial court erred in holding that it lacked jurisdiction to consider the petition, we conclude that the trial court's dismissal of the petition was ultimately correct.
The general subject-matter jurisdiction of Ohio courts of common pleas is defined entirely by statute pursuant to Section 4(B), Article IV of the Ohio Constitution, which states that "[t]he courts of common pleas and divisions thereof shall have such original jurisdiction over all justiciable matters * * * as may be provided by law." R.C. 2151.07
creates Ohio's juvenile courts, which are ordinarily divisions of the courts of common pleas. Pursuant to R.C. 2151.23(A)(2), a juvenile court has exclusive original jurisdiction to determine the custody of any child who is not a ward of a court. Insofar as Teri and Shelly's petition called for a determination of custody by the court,[4] and none of the Bonfield children were wards of a court, the juvenile court possessed jurisdiction to hear and determine the matter.
When a juvenile court exercises its jurisdiction in child-custody matters, it is mandated to do so in accordance with R.C. 3109.04.[5]
Teri and Sheri assert that the language of the statute, specifically subsection (A)(2), authorized an award of shared parenting to them. We disagree.
R.C. 3109.04(A)(2) provides the following:
 If at least one parent files a pleading or motion * * * for shared parenting * * * and if a plan for shared parenting is in the best interest of the children and is approved by the court * * *, the court may allocate the parental rights and responsibilities for the care of the children to both parents and issue a shared parenting order requiring the parents to share all or some of the aspects of the physical and legal care of the children * * *.
 According to the statutory language, a court may allocate parental rights and responsibilities to "parents." The question, then, is whether Shelly is a "parent" for the purposes of the statute.
Although Teri and Shelly acknowledge that the term "parent" typically refers to the biological or adoptive parent of a child, they note that R.C. 3109.04 does not specifically define the term as such. Therefore, they argue that a broad definition of the term, which includes individuals such as Shelly who have actively "co-parented" children with the approval of the legal parent, may be utilized. We disagree.
Although no definition of "parent" appears in R.C. 3109.04, R.C.3111.01(A) defines "parent and child relationship" in these terms:
 As used in sections 3111.01 to 3111.29 of the Revised Code, "parent and child relationship" means the legal relationship that exists between a child and the child's natural or adoptive parents and upon which those sections and any other provision of the revised code confer or impose rights, privileges, duties, and obligations. The "parent and child relationship" includes the mother and child relationship and the father and child relationship.
 This definition has been held to apply to R.C. Chapter 3109.[6] Accordingly, we reject Teri and Shelly's argument and conclude that "parent," for the purposes of R.C. 3109.04, includes only the natural or adoptive parents of a child. Because Shelly is neither the natural nor the adoptive parent of any of the five children, she is not a "parent" within the meaning of R.C. 3109.04 and, accordingly, is not entitled to an award of parental rights or shared parenting under the statute. Thus, we conclude that the trial court properly dismissed the petition. The first assignment of error is overruled.
Although we have concluded that existing Ohio law does not permit Teri and Shelly to enter into a shared-parenting plan, we do not intend to discredit their goal of providing a stable environment for the children's growth. Our respect for such a goal does not, however, provide us with an appropriate basis for disregarding the relevant statutory language. It is for the legislature, not this court, to recognize a broader definition of "parent" than that currently contained in the Revised Code.
In their second assignment of error, Teri and Shelly assert that the trial court violated Teri's fundamental constitutional right to direct the upbringing of her children by dismissing her petition.[7] We reject this assignment of error in that the fundamental right to make decisions concerning the care, custody, and control of one's children does not embrace the right to have all such decisions recognized or approved in law. In other words, although Teri's decision to "co-parent" her children with Shelly may be protected from interference by the state, she is not entitled to the benefit of laws that are, at present, clearly inapplicable to such a "familial" arrangement.[8] The second assignment of error is overruled, and the judgment of the trial court is affirmed.
Doan, P.J., Sundermann and Shannon, JJ. Raymond E. Shannon, retired of the First Appellate District, sitting by assignment.
[1] There is no appellee in this matter.
[2] During the course of the proceedings below, Shelly gave birth to a child, Jackson, who was also conceived through anonymous artificial insemination. Insofar as the petition at issue does not concern Jackson and no other petition with respect to him has been filed, we limit our discussion herein to the other five children.
[3] Shelly did not attempt to adopt the children because to do so would have resulted in the termination of Teri's parental rights. See R.C.3107.15(A)(1); In re Adoption of Jane Doe (1998), 130 Ohio App.3d 288,719 N.E.2d 1071.
[4] See Braatz v. Braatz (1999), 85 Ohio St.3d 40, 706 N.E.2d 1218
(recognizing that R.C. 3109 still governs custody rights, although it has been amended to refer to them as "parental rights and responsibilities"); see, also, In re Torok (1954), 161 Ohio St. 585,120 N.E.2d 307.
[5] R.C. 2151.23(F)(1).
[6] See Liston v. Pyles (Aug. 12, 1997), Franklin App. No. 97APF01-137, unreported.
[7] See Troxel v. Granville (2000), 530 U.S. 57, 120 S.Ct. 2054.
[8] See Liston v. Pyles, supra.