OPINION
{¶ 1} Defendant-appellant, Linda Whittington, appeals a Butler County Common Pleas Court decision, which expanded visitation for plaintiff-appellee, Charles Jones.
 {¶ 2} Linda and Charles lived together for four and one half to five years, until approximately September 2000. They are the parents of Malinda Jones who was born on June 26, 1995.
 {¶ 3} In September 2000, Linda filed for custody of Malinda in the Juvenile Division of the Butler County Court of Common Pleas. Linda was granted custody, and Charles was granted visitation rights.
 {¶ 4} In March 2001, Charles's visitation was expanded. In May 2001, Linda filed a domestic violence complaint against Charles, which the trial court later dismissed. In June 2001, Charles filed a contempt motion against Linda for denying his visitation. He also filed a motion for change of custody. The trial court found Linda in contempt for denying visitation, which she purged by facilitating make-up visitation.
 {¶ 5} The trial for Charles's change of custody motion was held in January, March and June 2002. The magistrate denied the change of custody, but modified the visitation time so that each parent would have the child on alternate weeks. The trial court overruled Linda's objections and adopted the magistrate's decision. This appeal follows.
Assignment of Error
 {¶ 6} "THE TRIAL COURT'S DECISION ORDERING A SHARED PARENTING PLAN IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 {¶ 7} Initially, we note no shared parenting order exists between the parties. Charles filed a motion for change of custody or additional time with the child. The trial court proceeded under R.C. 3109.04(E)(1)(a) to determine whether a change of circumstances had occurred. After determining that a change of circumstance had occurred, it then determined whether it was in the best interest of the child to change custody. The trial court found that it was not in Malinda's best interest to change custody, but that it was in her best interest to expand Charles's visitation.
 {¶ 8} Appellate review of a trial court's decision whether to modify visitation is reviewed under an "abuse of discretion" standard not a "clear and convincing" standard. In re McCaleb, Butler App. No. CA2003-01-012, 2003-Ohio-4333; see Davis v. Flickinger, 77 Ohio St.3d 415,418, 1997-Ohio-260. A trial court has wide latitude in considering all the evidence before it, and such a decision must not be reversed absent an abuse of discretion. Flickinger, 77 Ohio St.3d at 418. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
 {¶ 9} When considering Charles's motion to change custody, the trial court first determined whether a change had occurred in Malinda's or Linda's circumstances pursuant to R.C. 3109.04(E)(1)(a). The trial court found that there was a change of circumstances because "the mother has engaged in a pattern of behavior which is detrimental to the child's well-being. The mother has attempted to alienate Malinda from her father because of mother's animosity toward Mr. Jones. Mother's accusations are baseless and contrary to Malinda's best interest in maintaining a positive relationship with both of her parents." After thoroughly reviewing the record, we find the trial court did not abuse its discretion in making this finding.
 {¶ 10} The trial court proceeded to determine whether a change in custody was in the best interest of Malinda pursuant to R.C. 3109.04(F)(1). It found that a change of custody was not in her best interest, but a modification in the visitation schedule was in her best interest. The trial court should have made the modification to the visitation best interest determination pursuant to the factors delineated in R.C.3109.051(D). See Braatz v. Braatz, 85 Ohio St.3d 40, 1999-Ohio-203, at paragraph one of the syllabus (modification of visitation rights is governed by R.C. 3109.051[D]). However, the trial court's factual findings do support the change in visitation being in the best interest of Malinda pursuant to R.C. 3109.051(D).
 {¶ 11} The trial court found that both parents worked third shift, and that Linda lives in West Chester and Charles lives in Fairfield. Charles testified that he would have no problem driving Malinda to school in West Chester or picking her up. The trial court noted that it considered Malinda's wishes and concerns obtained during an in-chambers interview with the child.
 {¶ 12} The trial court further found that Malinda has a good relationship with both parents and her extended family. It also found that Malinda was "comfortable" in her home and has exhibited no academic problems in school. She is also involved in both of her parents' churches. The trial court related that Malinda is currently in counseling "due to concerns about her emotional well-being as a result of the ongoing custody dispute between her parents." Also, Charles underwent a psychological evaluation, which found him to be in the normal psychological range.
 {¶ 13} The trial court further related that Charles testified he was ahead in child support payments and that neither party had been previously convicted of a criminal offense involving any act that resulted in a child being abused or neglected. It also noted that neither parent was planning on establishing a residence outside of the state. Further, the trial court related that the guardian ad litem recommended that Malinda reside with each parent every other week.
 {¶ 14} The trial court also considered the parent more likely to facilitate visitation; whether the residential parent has continuously and willfully denied the other parent his right to visitation; and other factors in the best interest of the child.
 {¶ 15} Pertinently, the trial court related the following:
 {¶ 16} "In an entry dated October 23, 2001, the court made the following findings: `[T]he respondent Linda Whittington admitted that she denied the petitioner court ordered visitation over the Memorial Day, 2001 weekend and offered no legal justification for the same. Respondent's disobedience to this court's order not only resulted in petitioner being deprived of his visitation but prevented the child from participating in a family wedding all of which was known to respondent prior to the denial of said visitation. The court specifically addressed the issue of Memorial Day visitation with respondent prior to her denial of the same. The court finds that the respondent willfully disobeyed this court's order and accordingly recommends respondent be sentenced to serve 10 days in Butler County jail.'
 {¶ 17} "[M]other ultimately purged herself of contempt by permitting make up visitation. Of course, mother could not compensate for the loss of Malinda's participation in the wedding.
 {¶ 18} "Mother further attempted to deprive father of his court ordered visitation by the filing of a frivolous domestic violence petition in another division of the common pleas court, and obtaining an ex parte order terminating such visitation when this court had previously asserted jurisdiction over this matter. Father, in fact, testified that mother filed a total of three domestic violence complaints against him, all of which were dismissed. Mother has made referrals to Butler County Children Services Board as to father. Any allegations of wrongdoing on the part of the father as to Malinda were found to be unsubstantiated by the agency.
 {¶ 19} "Robert Huff, father's uncle, testified to an incident when Malinda was visiting father at Mr. Huff's home. Mr. Huff testified that mother called the home and spoke with Malinda on the telephone. He stated that prior to the call the child was enjoying herself watching a movie. Following the call Malinda became tense, nervous, and appeared to be in fear according to Huff. Mother called the Fairfield police department to the home where she was argumentative with officers stating that she would not leave the residence without Malinda. Mother ultimately left without the child whereupon she went to the Butler County Sheriff's office in an unsuccessful effort to get that agency to remove the child.
 {¶ 20} "Father's aunt, Janice Huff, and father's girlfriend, Laurie Goodin testified that mother made an obscene gesture to father when the parties were exchanging Malinda. Mother said to the child, in the presence of Ms. Goodin `You are right Malinda, she (Goodin) is fat and ugly.'
 {¶ 21} "Father testified that mother has been verbally abusive to him in the child's presence. He testified that mother refused to provide him with medical information regarding the child and would prevent him from seeing paperwork from Malinda's school."
 {¶ 22} After reviewing the record, we find little evidence to support Linda's contention that granting Charles expanded visitation would not be in Malinda's best interest. The record supports the trial court's conclusion that the visitation schedule should be modified. The trial court appropriately considered the factors weighing in Malinda's best interest, and its modification of Charles's visitation was not an abuse of discretion. The assignment of error is overruled.
Judgment affirmed.
VALEN, P.J., and YOUNG, J., concur.