OPINION *Page 2 
{¶ 1} Appellant, Frank C. Brown, Jr. (hereinafter "father"), appeals the Seneca County Court of Common Pleas, Juvenile Division's judgment entry adopting the magistrate's decision which recommended visitation rights for father. For the reasons that follow, we affirm.
 {¶ 2} This matter stems from the delinquency proceedings of father's alleged child (at that time), Frank C. Brown (d.o.b. 4/21/1992) (hereinafter "Brown"). On February 26, 2007, a complaint was filed in the Seneca County Court of Common Pleas, Juvenile Division, alleging that Brown committed one count of corruption with drugs, in violation of R.C. 2152.02(F) and R.C. 2925.02(A)(4), a felony of the third degree. Subsequently, Brown was also charged with possession in violation of R.C. 2151.02(F) and R.C. 2925.11, a minor misdemeanor. On March 5, 2007, after Brown entered admissions to all charges, he was found to be a delinquent child on both counts. The juvenile court ordered that Brown be committed to the Ohio Department of Youth Servicers ("ODYS") for a term of from six months to the age of twenty-one. However, the trial court suspended Brown's commitment and ordered that he be placed on probation, serve ninety days pre-authorized time at the Seneca County Youth Center, and be released early upon his placement at the Juvenile Residential Center of Northwest Ohio. *Page 3 
 {¶ 3} On April 25, 2008, a hearing was conducted for purposes of establishing child support in Brown's delinquency case. Neither father nor Brown's mother were present at the hearing, although it was noted that father was currently incarcerated and Brown's mother had been properly served. Ultimately, the magistrate recommended that Brown's mother and father each pay $215.62 per month, until Brown turned 18 or graduated from high school. Father filed a motion for extension of time to file an objection to the magistrate's decision, which was granted by the trial court on May 23, 2007. Father filed his objections to the magistrate's decision on June 18, 2007. On October 30, 2007, father filed a motion for genetic testing. On March 14, 2008, after the magistrate granted father's motion for genetic testing, father also filed a pro se motion requesting parenting time. On May 6, 2008, the genetic testing results were filed with the court, which did not exclude him as the father of Brown with a probability of paternity of 99.999999%.
 {¶ 4} A hearing on the issue of child support was held on May 8, 2008, and father and Brown's mother were each ordered to pay child support in the amount of $41.50 per month. At this hearing, father made a request to the magistrate for Brown's current address pursuant to an alleged Hancock County judgment.[1] While the magistrate found the mother's duties pursuant to the *Page 4 
Hancock County judgment were outside its jurisdiction, the court continued the matter on father's request for parenting time until it could conduct an incamera interview with Brown. This incamera interview was conducted on August 14, 2008. On August 18, 2008, the magistrate issued its decision, which stated that Brown, who was 16-years-old at that time, affirmatively indicated that he wanted to have visitation with father. However, because Brown did not want to burden his mother and father would be incarcerated until 2017, he wanted to wait until he could provide his own transportation for the visitations. Thus, the magistrate recommended that father be allowed to have visitation with Brown as it could be arranged between the two of them, respecting the issue of transportation.
 {¶ 5} Father objected to the magistrate's decision alleging that the magistrate had erred when it had not addressed the issue of father's right to have Brown's current address from Brown's mother. On September 15, 2008, the trial court adopted the magistrate's decision stating that father had failed to demonstrate that the magistrate was required to provide him with Brown's current address.
 {¶ 6} Father now appeals and raises one assignment of error.
 ASSIGNMENT OF ERROR NO. I THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT WHEN IT ADOPTED THE MAGISTRATES [SIC] DECISION WHICH FAILED TO INCLUDE A RECOMMENDATION THAT THE MOTHER OF *Page 5 APPELLANT'S CHILD MUST KEEP THE APPELLANT NOTIFIED OF THE CHILD'S CURRENT ADDRESS IN ORDER FOR APPELLANT TO REMAIN IN TOUCH WITH HIS CHILD.
 {¶ 7} Before deciding the merits of father's arguments, we note that the appellee failed to file a brief with this Court. In this situation, App. R. 18(C) states: "in determining the appeal, the Court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." We, therefore, accept the father's statement of the facts and issues as correct. Nonetheless, we are not persuaded that father's brief reasonably appears to sustain a reversal.
 {¶ 8} In his assignment of error, father argues that the trial court erred when it overruled his objection to the magistrate's decision finding that there was no specific mandate which required a visitation order to include the current contact information of father's child. In support of his argument, father points to the following sections of the Revised Code and argues that each implicitly requires the court to include the child's current contact information: R.C. 3109.03; R.C. 3109.051(H)(1), (G)(1); and, R.C. 3125.15.
 {¶ 9} A trial court is vested with broad discretion to make reasonable orders with respect to parental visitation issues. Trammell v.Missler, 3d Dist. No. 11-02-01, 2002-Ohio-2970, ¶ 8. See, also,State ex rel. Scordato v. George (1981), 65 Ohio St.2d 128,419 N.E.2d 4. As such, this Court will not disturb a trial *Page 6 
court's decision concerning visitation rights of parents absent an abuse of discretion. Crawford v. Crawford, 3d Dist. No. 14-06-42,2007-Ohio-3139, ¶ 45, citing Booth v. Booth (1989), 44 Ohio St.3d 142,144, 541 N.E.2d 1028; Corple v. Corple (1997), 123 Ohio App.3d 31, 36,702 N.E.2d 1234. An abuse of discretion connotes that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 10} Here, even though father admits in his brief that he and Brown's mother have never been married, father has formally acknowledged that he is the father of Brown (as a result of the genetic testing). Therefore, the particular section that governs this situation is R.C. 3109.12, which, in pertinent part, states:
 (A) If a child is born to an unmarried woman, the parents of the woman and any relative of the woman may file a complaint requesting the court of common pleas of the county in which the child resides to grant them reasonable companionship or visitation rights with the child. If a child is born to an unmarried woman and if the father of the child has acknowledged the child and that acknowledgment has become final pursuant to section 2151.232, 3111.25, or 3111.825 of the Revised Code or has been determined in an action under Chapter 3111 of the Revised Code to be the father of the child, the father may file a complaint requesting that the court of appropriate jurisdiction of the county in which the child resides grant him reasonable parenting time rights with the child and the parents of the father and any relative of the father may file a complaint requesting that the court grant them reasonable companionship or visitation rights with the child. *Page 7 
 (B) The court may grant the parenting time rights or companionship or visitation rights requested under division (A) of this section, if it determines that the granting of the parenting time rights or companionship or visitation rights is in the best interest of the child. In determining whether to grant reasonable parenting time rights or reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable parenting time rights or reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section.
When deciding the visitation rights of the parent pursuant to R.C. 3109.12, the trial court must consider the factors listed in R.C. 3109.051(D) to determine the best interest of the child. Braatz v.Braatz (1999), 85 Ohio St.3d 40, 44, 706 N.E.2d 1218; R.C. 3109.12(B). Moreover, in order to further the child's best interest, the trial court has the discretion to limit or restrict visitation rights. Jannetti v.Nichol (May 12, 2000), 7th Dist. No. 97-CA-239, at *3. "This includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." Id.
 {¶ 11} Father argues that because he is Brown's father, he should have been afforded equal parental rights over Brown pursuant to R.C. 3109.03. Father acknowledges that R.C. 3109.03 states it only applies to issues of parental rights concerning a "husband and wife [who] are living separate and apart from each *Page 8 
other, or are divorced," however, he claims that unwed parents have been afforded protections under the statute. We do not agree with father's interpretation of the statute.
 {¶ 12} When a court is interpreting a statute its primary goal is to ascertain and give effect to the legislature's intent in enacting the statute. State v. Lowe, 112 Ohio St.3d 507, 2007-Ohio-606,861 N.E.2d 512, ¶ 9, citing Brooks v. Ohio State Univ. (1996), 111 Ohio App.3d 342,349, 676 N.E.2d 162. The court must first look to the statute's plain language to determine the legislative intent. Id., citing State ex rel.Burrows v. Indus. Comm. (1997), 78 Ohio St.3d 78, 81, 676 N.E.2d 519. When the statute's meaning is unambiguous and definite the court must apply it in a manner consistent with its plain meaning. Id., citingPortage Cty. Bd. of Commrs. v. Akron, 109 Ohio St.3d 106, 2006-Ohio-954,846 N.E.2d 478, ¶ 52, citing State ex rel. Savarese v. Buckeye LocalSchool Dist. Bd. of Edn. (1996), 74 Ohio St.3d 543, 545, 660 N.E.2d 463;Burrows, 78 Ohio St.3d at 81. Here, the language of the statute clearly only pertains to husbands and wives who are no longer living together or are divorced. R.C. 3109.03 is not worded in terms of "parents" in general and makes no reference of the rights of unmarried parents in the plain language of the statute. Furthermore, we find it dispositive that R.C. 3109.12 does specifically state the rights of unmarried mothers and fathers in the *Page 9 
context of awarding parental rights and responsibilities. Therefore, we do not find father's arguments pertaining to R.C. 3109.03 persuasive.
 {¶ 13} Father also argues that he was entitled to Brown's current contact information pursuant to R.C. 3109.051(G)(1), which provides:
 If the residential parent intends to move to a residence other than the residence specified in the parenting time order or decree of the court, the parent shall file a notice of intent to relocate with the court that issued the order or decree. Except as provided in divisions (G)(2), (3), and (4) of this section, the court shall send a copy of the notice to the parent who is not the residential parent. Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child.
Father claims that because the residence should be specified in the order allocating parenting time and he has a right to notification if the residence changes, he thereby is entitled to know Brown's current residence.
 {¶ 14} As we stated earlier, because father and Brown's mother were never married, but father has acknowledged his paternity, R.C. 3109.12
is the particular section that governs father's parenting time rights. In addition to considering the best interest of the child, R.C. 3109.12
does incorporate certain divisions of R.C. 3109.051:
 In determining whether to grant reasonable parenting time rights or reasonable companionship or visitation rights with respect to any child, the court shall consider all relevant factors, including, but not limited to, the factors set forth in division (D) *Page 10 of section 3109.051 of the Revised Code. Divisions (C), (K), and (L) of section 3109.051 of the Revised Code apply to the determination of reasonable parenting time rights or reasonable companionship or visitation rights under this section and to any order granting any such rights that is issued under this section.
R.C. 3109.12(B) (emphasis added). Notably absent from this incorporation is R.C. 3109.051(G), which is the particular division father relies upon in support of his argument. Therefore, because R.C. 3109.12 governs father's parenting rights and R.C. 3109.12 does not incorporate R.C. 3109.051(G) into a trial court's considerations when issuing parenting time rights to unwed fathers who have acknowledged paternity, we find father's reliance on R.C. 3109.051(G)(1) is misplaced.
 {¶ 15} However, even if R.C. 3109.051(G)(1) is applicable to father's parenting time rights determination, we would still find that the trial court did not abuse its discretion in failing to provide father with Brown's current address as part of his parenting time order. As stated above, a trial court is vested with broad discretion to make reasonable orders with respect to parental visitation issues, which "includes the power to restrict the time and place of visitation, to determine the conditions under which visitation will take place and to deny visitation rights altogether if visitation would not be in the best interests of the child." Trammell, 2002-Ohio-2970, at ¶ 8; Jannetti (May 12, 2000), 7th Dist. No. 97-CA-239, at *3. *Page 11 
 {¶ 16} Here, the trial court granted father's request for parenting time, but after conducting an incamera interview with Brown, decided to allow Brown to determine the amount and timing of the visitations. Brown was 16-years-old at the time and affirmatively stated that he wanted to have contact with father. (Aug. 14, 2008 Tr. at 3-4); (Aug. 15, 2008 Mag. Dec). When the magistrate specifically asked Brown what kind of contact he wished to have with father, Brown replied, "I would like to go see him." (Aug. 14, 2008 Tr. at 4). Brown also stated that he was not sure how soon he would go visit father, although he wished to see father before he turned eighteen. (Id. at 4-5). However, Brown explicitly stated that he did not want to burden his mother with transporting him to the prison to see father, so he at least wanted to wait to have visitation with father until he obtained his driver's license and was able to transport himself to the prison. (Id. at 5).
 {¶ 17} Given Brown's age, his concern for his mother, and his stated desire to wait until he could transport himself to father's location, we believe that the trial court's restricted parenting time order was reasonable. Furthermore, given the expressed desire of Brown to control the visitations with father, we do not believe that it was necessary for the magistrate to have provided father with Brown's current address. In addition, we find nothing in the Revised Code that requires that this information be provided to father. Therefore, we find that the *Page 12 
trial court did not abuse its discretion when it overruled father's objections to the magistrate's decision and adopted the magistrate's parenting time order.
 {¶ 18} Father also argues that he had a right to access Brown's records pursuant to R.C. 3109.051(H)(1), and that the trial court erred in not requiring the Seneca County Child Support Enforcement Agency to provide him with its records pursuant to R.C. 3125.15. However, while father did raise these issues in front of the magistrate during the May 8, 2008 hearing, father failed to object to the magistrate's decision on this basis. Generally speaking, "[a] party waives any error that he could have, but did not, call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." Butler v. Butler, 4th Dist. No. 02CA2833, 2002-Ohio-5877, ¶ 19, citing Stores Realty Co. v. Cleveland (1975), 41 Ohio St.2d 41, 43,322 N.E.2d 629; Van Camp v. Riley (1984), 16 Ohio App.3d 457, 463,476 N.E.2d 1078. See also, Civ. R. 53(D)(3)(b)(iv). Since father failed to object to the magistrate's decision on this basis, we find that he has now waived this issue for purposes of this appeal.
 {¶ 19} Father's assignment of error is, therefore, overruled.
 {¶ 20} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.
Judgment Affirmed
 WILLAMOWSKI and SHAW, J.J., concur.
[1] We note that in the transcripts of the proceedings the parties make reference to a Hancock County judgment; however, this judgment is absent from the record. *Page 1