OPINION
{¶ 1} Defendant-appellant, Paul Mabra, appeals a decision of the Fayette County Court of Common Pleas, Juvenile Division, granting the motion to relocate of plaintiff-appellee, Kelly Williams n.k.a. Baker, and revising appellant's visitation schedule with the parties' minor son to accommodate appellee's relocation. We affirm.
 {¶ 2} In September 1995, appellee gave birth to a son. In April 1996, appellee and appellant signed an "Acknowledgement of Paternity," in which appellant acknowledged that he was the father of appellee's son. In March 1997, appellant was ordered to pay appellee $25.80 per week in child support for their son, which in August 1999, was increased to $86.59 per week.
 {¶ 3} In December 2000, the parties entered into a "Memorandum of Agreement" regarding the division of parental rights and responsibilities as to their son. The parties agreed that appellee would be designated as the child's "residential parent" and that appellant would be designated as the child's "non-residential parent." They also agreed that appellant would have visitation with their son every Wednesday from 6:00 p.m. until 8:00 p.m., and that "[a]ny other additional parenting time will be determined and agreed upon by the parties."
 {¶ 4} Sometime after they entered into their parenting arrangement, the parties agreed that appellant would have visitation with their son every other weekend in addition to the two hours he already had on Wednesday nights. While appellant would sometimes miss his opportunity to visit with his son on Wednesday nights, he consistently visited with his son every other weekend.
 {¶ 5} On February 18, 2005, appellee filed a letter requesting the trial court to grant her permission to relocate her family, including the parties' son, to Florida. The matter was referred to a magistrate. After holding a hearing on appellee's motion to relocate, the magistrate issued a decision denying appellee's request to relocate on the grounds that appellee had not established she had employment or a residence in Florida, and that appellant has "a steady relationship" with their son and it would be in their son's best interest for that relationship to continue.
 {¶ 6} On April 26, 2005, appellee filed a "letter of objection" to the magistrate's decision, in which she stated that she had misunderstood some of the questions posed to her by the magistrate, and that this misunderstanding had resulted in the magistrate making incorrect findings of fact. Appellee asserted that she had a job offer in Florida; that her husband is a member in good standing with a labor union, and that he received a transfer letter from the union allowing him to work in Florida; and that she and her husband had established a residence in Florida. Upon consideration of appellee's objections, the trial court again referred the matter to the magistrate.
 {¶ 7} The magistrate held a second hearing on appellee's motion to relocate, at which appellee presented evidence in support of her claims that she had a job offer in Florida and had established a residence there. Appellee testified that she wanted to relocate to Florida because she believed that she, her husband, and her children, including the parties' son, "have a better opportunity" there. Although appellant was sent notice of the hearing, he did not attend.
 {¶ 8} On July 6, 2005, the magistrate issued a decision granting appellee's motion to relocate. To accommodate appellee's relocation, the magistrate revised appellant's visitation schedule with the parties' son to two months in the summer, instead of every other weekend, with the parties alternating holiday visits.
 {¶ 9} On July 14, 2005, appellant filed a letter with the trial court, stating that he "would like to appeal the motion to move out of state[.]" The trial court treated appellant's letter as an objection to the magistrate's decision, and scheduled the matter for a hearing. After holding a hearing on appellant's objection, the trial court issued a judgment entry on August 22, 2005, adopting the magistrate's July 6, 2005 decision, with one modification: the court ruled that appellant "shall be entitled to telephone calls with the minor child at reasonable times and at [appellant's] expense."
 {¶ 10} Appellant now appeals from the trial court's decision, raising the following assignments of error:
 {¶ 11} Assignment of Error No. 1:
 {¶ 12} "THE TRIAL COURT ABUSED ITS DISCRETION BY BASING ITS DECISION ON [APPELLEE'S] CONSTITUTIONAL RIGHT TO MOVE."
 {¶ 13} Appellant asserts that the trial court abused its discretion by applying an incorrect legal standard in granting appellee's motion to relocate and in modifying the parties' visitation schedule to accommodate that relocation, because it primarily based its decision on appellee's constitutional right to move rather than on the best interest of the parties' child. We disagree with this argument.
 {¶ 14} As appellant concedes, a parent has a constitutional right to live anywhere in the country that he or she chooses and to relocate at his or her will. Quint v. Lomakoski, Greene App. No. 2005-CA-38, 2005-Ohio-4603, ¶ 19. When a child is relocated outside the state of a non-residential parent, and will reside a considerable distance from that parent, a visitation schedule previously fashioned will oftentimes no longer be appropriate. See Spain v. Spain (June 21, 1995), Logan App. No. 8-94-30. Modification of visitation rights upon the residential parent's relocation is governed by R.C. 3109.051. See Braatz v. Braatz,85 Ohio St.3d 40, 45, 1999-Ohio-203, paragraph one of the syllabus. R.C. 3109.051 states, in pertinent part:
 {¶ 15} "(G)(1) If the residential parent intends to move to a residence other than the residence specified in the parenting time order or decree of the court, the parent shall file a notice of intent to relocate with the court that issued the order or decree. * * * [T]he court shall send a copy of the notice to the parent who is not the residential parent. Upon receipt of the notice, the court, on its own motion or the motion of the parent who is not the residential parent, may schedule a hearing with notice to both parents to determine whether it is in the best interest of the child to revise the parenting time schedule for the child."
 {¶ 16} In determining whether it is in the child's best interest to modify a non-residential parent's visitation rights upon the relocation of the residential parent, the trial court must consider the 15 factors enumerated in R.C.3109.051(D)(1)-(15),[1] plus "[a]ny other factor in the best interest of the child." R.C. 3109.051(D)(16). After considering all of the factors listed in R.C. 3109.051(D), the trial court, in its sound discretion, must determine what visitation schedule is in the best interest of the child.Braatz, 85 Ohio St.3d at 45.
 {¶ 17} In this case, the magistrate found in its July 6, 2005 decision that although appellant regularly visited with the parties' child, allowing appellee to relocate to Florida was in the child's best interest. The trial court adopted the magistrate's decision after modifying it to allow appellant to make telephone calls to the child at reasonable times at appellant's expense.
 {¶ 18} In rejecting appellant's objection to the magistrate's decision, the trial court noted that appellee "has a constitutional right to move around the country." However, the trial court went on to emphasize that appellee and her husband had chosen to move to Florida "to better their lives[,]" and further found that there was no evidence showing that appellee was moving out of state to deny appellant his relationship with the parties' child.
 {¶ 19} There is nothing in either the magistrate's decision or trial court's decision to indicate that the magistrate or the trial court was unaware that their primary obligation was to decide whether appellee's motion to relocate was in the best interest of the parties' child. Under these circumstances, we conclude that the trial court did not apply the wrong standard in determining whether to grant appellee's motion to relocate or to revise appellant's visitation schedule to permit appellee to relocate.
 {¶ 20} Appellant's first assignment of error is overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING WHETHER THE MODIFICATION OF THE VISITATION SCHEDULE WOULD BE IN THE BEST INTEREST OF THE CHILD."
 {¶ 23} Appellant argues that the trial court abused its discretion by not considering whether the modification of the visitation schedule was in the best interest of the parties' child. We disagree with this argument.
 {¶ 24} As indicated in our response to appellant's first assignment of error, the magistrate expressly found that it was in the child's best interest to grant appellee's motion to relocate, and therefore the magistrate revised appellant's visitation schedule to accommodate appellee's relocation. The trial court affirmed this decision after modifying it to allow appellant to regularly telephone the child at appellant's expense.
 {¶ 25} Appellant supports his argument under this assignment of error by relying on Quint, 2005-Ohio-4603. However, appellant's reliance on that case is misplaced.
 {¶ 26} In Quint, the mother filed a motion to modify visitation along with a notice of intent to relocate. The trial court found that the motion was not in the child's best interest, and overruled it. Id. at ¶ 6. The court of appeals reversed the trial court's decision, stating as follows:
 {¶ 27} "[The father] opposed any modification of visitation. However, he did not seek a modification of custody. Therefore, the only issue pending before the trial court was [the mother's] motion to modify visitation due to her relocation. A review of the trial court's decision indicates that the trial court incorrectly made a determination of whether the relocation was in [the child's] best interest rather than properly limiting its determination as to whether a modification of visitation, upon relocation, would be in his best interest. * * *
 {¶ 28} "* * *
 {¶ 29} "* * * [T]he trial court improperly determined that the child should not be relocated, when it should have limited its inquiry to whether the visitation should be effectuated in a different manner. This, by itself, is an abuse of discretion.
 {¶ 30} "We conclude that the trial court abused its discretion when it denied [the mother's] motion for modification of visitation, because its decision was based upon its conclusion that the relocation of [the mother] and her child was not in the child's best interest, and this issue was not properly before the trial court." Quint, 2005-Ohio-4603 at ¶ 20, 22, and 23.
 {¶ 31} In this case, by contrast, the issue as to whether or not appellee's relocation to Florida was in the best interest of the parties' child was properly before the trial court, as was the issue of whether to revise appellant's visitation schedule to permit appellee's relocation. Thus, we find Quint
distinguishable from this case.
 {¶ 32} Appellant's second assignment of error is overruled.
 {¶ 33} Assignment of Error No. 3:
 {¶ 34} "THE TRIAL COURT ABUSED ITS DISCRETION BY NOT CONSIDERING ALL FIFTEEN OF THE FACTORS ENUMERATED IN R.C. 3109.051(D)."
 {¶ 35} Appellant argues that the trial court abused its discretion by not considering each of the 15 factors listed in R.C. 3109.051(D), including "his summer employment schedule," in arriving at its decision to grant appellee's motion to relocate. We disagree with this argument.
 {¶ 36} Civ.R. 52 states, in pertinent part:
 {¶ 37} "When questions of fact are tried by the court without a jury, judgment may be general for the prevailing party unless one of the parties in writing requests otherwise before the entry of judgment pursuant to Civ.R. 58, or not later than seven days after the party filing the request has been given notice of the court's announcement of its decision, whichever is later, in which case, the court shall state in writing the conclusions of fact found separately from the conclusions of law."
 {¶ 38} One appellate court has held that Civ.R. 52 does not require separate findings of fact and conclusions of law upon a timely request for such findings in proceedings that only involve a modification of visitation. In re Thrush (1988),44 Ohio App.3d 40. However, the dissent in Thrush found that Civ.R. 52 does require "separate findings of fact and conclusions of lawupon timely request." (Emphasis added.) Id. at 41.
 {¶ 39} In this case, appellant never asked the trial court to make separate findings of fact or conclusions of law pursuant to Civ.R. 52. Furthermore, when a hearing was held on appellant's "objection" to the magistrate's decision to grant appellee's motion to relocate and modify the parties' visitation schedule, appellant did not object to the magistrate's decision on the basis that the magistrate failed to take into account appellant's summer employment schedule or any of the other factors listed in R.C. 3109.051(D). Instead, appellant objected to the magistrate's decision on the grounds that he did not want his son to live that far away from him, because, according to appellant, appellee had failed in the past to communicate with him about their son.
 {¶ 40} After the trial court told appellant that it was not going to change the magistrate's decision, appellant alleged, without offering any evidence in support, that appellee's husband was a felon.[2] Appellant also told the trial court that he did not want to let another man raise his son, and that he was going to get a lawyer. The trial court told him he was free to do so.
 {¶ 41} In light of appellant's failure to request the trial court to issue separate findings of fact and conclusions of law, we conclude that the trial court did not err in failing to do so. Furthermore, we see no evidence in the record to support appellant's assertion that the trial court failed to take into account all of the factors enumerated in R.C. 3109.051 in affirming the magistrate's best interest determination.
 {¶ 42} Appellant's third assignment of error is overruled.
 {¶ 43} The trial court's judgment is affirmed.
Walsh and Brogan, JJ., concur.
Brogan, J., of the Second Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 5(A)(3), Article IV of the Ohio Constitution.
[1] {¶ a} R.C. 3109.051 states, in pertinent part:
{¶ b} "(D) In determining * * * visitation matters under this section * * * of the Revised Code, the court shall consider all of the following factors:
{¶ c} "(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;
{¶ d} "(2) The geographical location of the residence of each parent and the distance between those residences * * *;
{¶ e} "(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;
{¶ f} "(4) The age of the child;
{¶ g} "(5) The child's adjustment to home, school, and community;
{¶ h} "(6) * * *;
{¶ i} "(7) The health and safety of the child;
{¶ j} "(8) The amount of time that will be available for the child to spend with siblings;
{¶ k} "(9) The mental and physical health of all parties;
{¶ l} "(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;
{¶ m} "(11) In relation to parenting time, whether either parent previously has been convicted of or pleaded guilty to any criminal offense involving any act that resulted in a child being an abused child or a neglected child; whether either parent, in a case in which a child has been adjudicated an abused child or a neglected child, previously has been determined to be the perpetrator of the abusive or neglectful act that is the basis of the adjudication; and whether there is reason to believe that either parent has acted in a manner resulting in a child being an abused child or a neglected child;
{¶ n} "(12) * * *;
{¶ o} "(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;
{¶ p} "(14) Whether either parent has established a residence or is planning to establish a residence outside this state;
{¶ q} "(15) * * *."
[2] Upon being questioned by the trial court, appellee denied that her husband had any criminal history of violence against a child or threatening a child in any way.