[Cite as *Studebaker v. Studebaker*, 2014-Ohio-2211.]

IN THE COURT OF APPEALS FOR CLARK COUNTY, OHIO

KEVIN D. STUDEBAKER           :

     Plaintiff-Appellee          :  C.A. CASE NO.   2013 CA 84

v.                              :  T.C. NO.   09DR828

MICHELE D. STUDEBAKER      :  (Civil appeal from Common
                                  Pleas Court, Domestic Relations)

     Defendant-Appellant      :

                                  :

. . . . . . . . . .

**O P I N I O N**

Rendered on the    23rd    day of     May    , 2014.

. . . . . . . . . .

ROBERT N. LANCASTER, JR., Atty. Reg. No. 0039461, 700 East High Street, Springfield, Ohio 45505
       Attorney for Plaintiff-Appellee

TODD D. SEVERT, Atty. Reg. No. 0060076, 18 East Water Street, Troy, Ohio 45373
       Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, P.J.

{¶ 1}   Michele Studebaker appeals from a judgment of the Clark County Court of Common Pleas, Domestic Relations Division, which denied her motion to modify Kevin Studebaker's visitation with their children and refused to impute income to Mr.

Studebaker for purposes of its child support calculation.

{¶ 2} For the following reasons, the judgment of the trial court will be affirmed with respect to Mr. Studebaker's child support obligation and reversed with respect to the visitation arrangement. The matter will be remanded for the trial court to craft a visitation plan that is in the children's best interest, taking into account Ms. Studebaker's anticipated move to Texas, unless her plans to move have changed.

{¶ 3} The parties married in 1997 and divorced in 2010. They have three minor children, as well as a fourth child who was emancipated at all times relevant to these proceedings. The minor children are 13-year-old twins, a boy and a girl, and a ten-year-old daughter. At the time of their divorce, the Studebakers adopted a shared parenting plan, but in 2012 they agreed to terminate shared parenting. Ms. Studebaker was named the residential and custodial parent, and Mr. Studebaker had visitation with the children from Thursday through Sunday one week and Wednesday and Thursday, overnight, the next week, on an alternating basis. Mr. Studebaker exercised his visitation with his son and younger daughter very consistently, but the older daughter refused to attend visitation most of the time. The daughter's refusal to participate, and Ms. Studebaker's deference to the child on this decision, was a point of contention for the parties; Mr. Studebaker sought to arrange counseling with the older daughter to resolve the issues between them.

{¶ 4} Pursuant to the parties' 2012 agreement, Mr. Studebaker paid child support at a level approximately $200 per month below what would have been required by the standard child support calculation worksheet. However, he had more visitation with the children than a standard order would have provided, and he agreed to pay 100% of certain

expenses related to the children.

{¶ 5} In January 2013, Mr. Studebaker filed a motion to modify his child support obligation due to a reduction in his income. In February 2013, Ms. Studebaker filed a notice of intent to relocate to Texas; she also requested modification of parenting time and child support based on the relocation. The trial court appointed a guardian ad litem and scheduled a hearing before a magistrate in May 2013.

*Child Support and Imputed Income*

{¶ 6} At the hearing, Mr. Studebaker presented evidence that, in November 2012, he was terminated from his employment with Konecranes after being accused of "bullying a subordinate;" he threatened to fire an employee if she did not improve her behavior. At the hearing, Mr. Studebaker asserted that, in his opinion, his handling of the situation at Konecranes for which he was fired had been appropriate, although his supervisors had disagreed. Prior to that incident, his performance reviews had all been "exemplary." His termination formed the basis of his motion for a modification of child support.

{¶ 7} Mr. Studebaker was unemployed – and collected unemployment compensation without objection from Konecranes – for approximately three months; then he obtained a new position with a temporary agency in February 2013 at a lower rate of pay. The difference between his annual income with Konecranes and in his new position with the temporary agency (calculated over one year) was approximately $17,600 ($80,000 vs. $62,400).

{¶ 8} Ms. Studebaker asked the trial court to impute additional income to Mr. Studebaker because of the circumstances surrounding the termination of his employment

with Konecranes. However, the magistrate concluded that there was no evidence that Mr. Studebaker had voluntarily terminated his employment, that he had intentionally chosen to become unemployed or underemployed, that he left his employment voluntarily, or that he intended to reduce or terminate his income to avoid his child support obligation. The magistrate modified the child support obligation to one amount for the period of unemployment (between the filing of Mr. Studebaker's motion and his finding of new employment), and then to another amount based on his new income level. The parties do not take issue with the magistrate's calculations, and the precise amounts of the support orders are not pertinent to this appeal.

{¶ 9} With respect to the current child support obligation, the magistrate ordered that Mr. Studebaker pay child support in accordance with the standard child support calculation, based on Mr. Studebaker's income at the time of the hearing (at the temporary agency) and without imputing additional income. This calculation actually resulted in an increase in the monthly child support obligation, because of the parties' prior agreement to a downward deviation in the monthly payment (coupled with Mr. Studebaker's payment in full of certain additional expenses).

*Relocation and Visitation*

{¶ 10} With respect to her proposed move to Texas, Ms. Studebaker explained that she was originally from Texas and had reconnected with a former boyfriend, Gregg Porter, over the Internet. She planned to move to Texas and marry him. The couple had been together only once, for ten days, in the two years since they reconnected. Prior to that visit, Ms. Studebaker and Mr. Porter had not seen each other for seven years. Although Ms.

Studebaker has some relatives in Texas, the evidence indicated that she and the children had not maintained close ties with those relatives. According to Mr. Studebaker, the older children had only been to Texas one time previously, when the twins were very young.

{¶ 11} Mr. Porter is an insurance agent with no children. If he moved to Ohio, he would give up his existing client base and would have to be relicensed. Ms. Studebaker stated that she had a job offer in Texas to be a bookkeeper for a relative of Mr. Porter; she had not yet visited the job site, but she knew the rate of pay, and she believed that the job would give her flexibility to care for her children.

{¶ 12} The children generally did well in school and had no behavioral problems, but two of the children had recently reported being bullied. The Studebakers' son was struggling in some classes at the time of the hearing, which the parties attributed to his failure to turn in completed assignments and his poor organizational skills.

{¶ 13} Mr. Studebaker's parents, who live near the children, have frequent interaction with them and attend school and sporting events, as does Mr. Studebaker. The interactions of the paternal grandparents with the older daughter are somewhat limited, as compared with the other children, because of her refusal to spend time with her father; this issue also affected the amount of time the siblings were able to spend together.

{¶ 14} The friction between Mr. Studebaker and the older daughter had existed for some time, without improvement. She did not visit with Mr. Studebaker except for a few occasions when both were at the paternal grandparents' home at the same time. Ms. Studebaker claimed that she encourages the older daughter to visit with her father, but Mr. Studebaker testified that the child is sometimes not even awake or present when he comes to

pick up the other kids. The magistrate concluded that "it is clear that [Ms. Studebaker] is deferring to [the older daughter] about visiting" her father. In 2012, the parties agreed that Mr. Studebaker and the older daughter would engage in counseling, but disagreements about providers and Mr. Studebaker's difficulty paying for the sessions resulted in a significant period in which such counseling did not happen.

{¶ 15} Mr. Studebaker expressed concern about how he could work on his relationship with his daughter if she moved to Texas, and also about the likelihood of visitation under such an arrangement, considering that she refused to participate in the shorter visits afforded under the current arrangement. Ms. Studebaker stated that she would send all of the children to visit, but she also stated that she thought the children would benefit from an extended period without seeing Mr. Studebaker. It was clear from the evidence that the parties did not have the best spirit of cooperation or good communication regarding the children.

{¶ 16} The magistrate did not interview the children, but the guardian ad litem's report and Ms. Studebaker's testimony indicated that the children were excited about the move. The guardian ad litem recommended that Ms. Studebaker be allowed to move with the children and that Mr. Studebaker be afforded significant visitation in the summer and on school breaks. The guardian ad litem suggested that Mr. Studebaker could engage in intensive family counseling with the older daughter (and the other children, if necessary) over the summer. The guardian ad litem also believed that the additional distance between the parties might facilitate stability and healing of the relationships.

{¶ 17} The magistrate concluded that, while it was understandable that Ms.

Studebaker wanted to reside with her prospective husband, "residing with him did not necessitate that she and the children relocate to Texas," because Mr. Porter could relocate to Ohio. The magistrate observed that Mr. Studebaker "faithfully exercises his extended visitation rights," that his relationship with the children would be "seriously impaired" by the move, and that a move would make it impossible for Mr. Studebaker to engage as actively with his children or engage in counseling with the older daughter. Moreover, the magistrate found that "the cumulative evidence does not show that the children overall are unhappy in their present circumstances nor that those circumstances are overall contrary to their best interests or that there is any significant instability in their current environment." Thus, the magistrate concluded that the best interests of the children did not compel modification of the existing visitation schedule.

{¶ 18} Ms. Studebaker filed objections to the magistrate's decision regarding visitation and child support. The trial court found that the magistrate's findings of fact on these issues were supported by credible evidence and that the conclusions were legally correct. The trial court approved the magistrate's conclusions with respect to these issues.

{¶ 19} Ms. Studebaker appeals, raising two assignments of error.

{¶ 20} The first assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO ORDER A REVISED PARENTING TIME SCHEDULE[,] ESSENTIALLY PROHIBITING THE CUSTODIAL PARENT FROM MOVING WITH THE MINOR CHILDREN.

{¶ 21} Ms. Studebaker contends that the trial court abused its discretion in finding

that the best interest of the children did not justify a modification of visitation time under the circumstances presented and in prohibiting her, in fact, from moving with the children.

**{¶ 22}** R.C. 3109.051(G)(1) states that, if the residential parent intends to relocate and files a notice of such intent with the court, the court may schedule a hearing "to determine whether it is in the best interest of the child to revise the parenting time schedule for the child." In making this determination, the trial court must consider the specific factors enumerated in R.C. 3109.051(D)(1)-(15), as well as any other factor in the child's best interest. R.C. 3109.051(D)(16). These factors include the relationships between the child and each parent, siblings and other relatives, the child's wishes and age, the mental and physical health of all involved, and the like. Weighing these factors, the court, in its discretion, must determine what visitation schedule is in the best interest of the child. *Braatz v. Braatz*, 85 Ohio St.3d 40, 45, 706 N.E.2d 1218 (1999); *Quint v. Lomakoski*, 2d Dist. Greene No. 2005-CA-38, 2005-Ohio-4603, ¶17.

**{¶ 23}** Modification of visitation rights pursuant to R.C. 3109.051 is within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *In re A.J.B.,* 2d Dist. Miami No. 11CA006, 2011-Ohio-6176,¶ 20, citing *Appleby v. Appleby*, 24 Ohio St.3d 39, 41, 492 N.E.2d 831 (1986). An abuse of discretion has been defined as an attitude that is unreasonable, arbitrary or unconscionable. *In re A.J.B.*, at ¶ 20, citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that

the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive * * *." *Id.* at ¶ 21, citing *AAAA Enterprises, Inc. v. River Place Community Redevelopment*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 24} A parent has a constitutional right to live anywhere in the country that he or she chooses and to relocate at will. *Quint* at ¶ 19; *Williams v. Mabra*, 12th Dist. Fayette No. CA2005-09-027, 2006-Ohio-5845, ¶ 14. The filing of the notice of intent to relocate required by R.C. 3109.051(G)(1) does not, in and of itself, grant the court the authority to prevent a party's relocating to another state. *Quint* at ¶ 19; *Kassavei v. Hosseinipour,* 11th Dist. Trumbull No. 2000-T-0132, 2001 WL 589392, *1 (June 2, 2001); *Spain v. Spain*, 3d Dist. Logan No. 8-94-30, 1995 WL 380067, *2 (June 21, 1995). "Certainly, when a child is relocating outside the residential state of a non-custodial parent, and will reside a considerable distance from that parent, a visitation schedule previously fashioned may no longer be appropriate." *Quint* at ¶ 19, quoting *Spain*. In such a circumstance, R.C. 3109.051 provides the court with authority to modify the visitation schedule to comport with the increased distance between the parents. *Id.*

{¶ 25} In the Studebakers' case, the magistrate acknowledged that the court did not have the authority to prevent Ms. Studebaker from relocating to Texas, but, instead, "must determine whether * * * it is in the best interest of the children to revise the parenting time schedule for the children." In reviewing the facts informing its decision, however, it appears that only factors related to the appropriateness of the move were considered. The magistrate discussed the negative effect that a move might have on the children's relationships with relatives in Ohio, questioned the necessity of a move by suggesting that Ms. Studebaker's fiancé

could move to Ohio instead, and noted that there was no unhappiness or "significant instability" in their current environment. The magistrate then concluded that Ms. Studebaker's request to modify visitation should be denied. Further, in approving the magistrate's decision, the trial court characterized Ms. Studebaker's motion as one "allowing her to relocate with the minor children," as well as seeking a related modification of the visitation arrangement.

{¶ 26} The effect of the court's order was that Mr. Studebaker would continue to have visitation with his children for a portion of every week, notwithstanding the fact that they would be living sixteen hours apart by car. Since the court did not have the authority to prevent Ms. Studebaker from moving out of state, the trial court abused its discretion in concluding that any modification of the visitation arrangement was not in the best interest of the children in these circumstances; the court's decision resulted in a de facto denial of any visitation by Mr. Studebaker with the children or prohibited Ms. Studebaker from moving.

{¶ 27} The facts of this case are closely analogous to *Quint*. In that case, Mother, the residential and custodial parent, filed a notice of intent to relocate from Ohio to North Carolina, due to Mother's fiancé's relocation for a job, and a motion to modify visitation. Father had weekly overnight visitation with the child pursuant to the parties' parenting agreement. Father opposed Mother's motion to modify visitation to accommodate the move, but he did not seek a modification of custody. The trial court denied Mother's motion, concluding that the child's life should not be disrupted and that the harm to the child resulting from the move would outweigh its benefits. On appeal, we concluded that the trial court had abused its discretion: "[T]he trial court improperly determined that the child should not be relocated, when it should have limited its inquiry to whether visitation should be effectuated in a different manner. This,

by itself, is an abuse of discretion." *Quint* at ¶ 22. Our holding in this case is consistent with *Quint*.

{¶ 28} The first assignment of error is sustained.

{¶ 29} The second assignment of error states:

THE TRIAL COURT ERRED IN NOT FINDING THAT APPELLEE WAS INVOLUNTARILY UNEMPLOYED IN LOWERING HIS CHILD SUPPORT OBLIGATION.

{¶ 30} Ms. Studebaker asserts that the trial court erred in refusing to treat the change in Mr. Studebaker's employment as voluntary unemployment or underemployment, because his misconduct at his job with Konecranes caused a reduction in his income.

{¶ 31} The crux of Ms. Studebaker's argument is that the trial court should have found Mr. Studebaker at fault for his reduction in income, and thus should not have approved reductions in child support during his period of unemployment or due to his lower income in a new position. Neither party disputes the calculations used by the trial court, assuming that the amounts of Mr. Studebaker's unemployment compensation and of his new income were the proper bases for the calculation in each of the relevant periods.

{¶ 32} In his testimony, Mr. Studebaker explained the incident that led to his termination from Konecranes. He stated that he supervised an employee whom he found to be "extremely disrespectful" and problematic. Although other supervisors had advised him to ignore the problem, Mr. Studebaker confronted the employee and threatened to fire her if her behavior did not improve. Mr. Studebaker maintained that he believed his behavior had been appropriate under the circumstances, but the company viewed his threat as harassment and fired

him. However, he was allowed to collect unemployment benefits. Mr. Studebaker's prior record with Konecrances had been exemplary, and he did not think that his termination had been justified. He was unemployed for approximately three months before finding other employment, at a somewhat lower pay level.

{¶ 33} No other witnesses testified about the circumstances surrounding Mr. Studebaker's termination.

{¶ 34} Based on the evidence presented, the trial court could have reasonably concluded that Mr. Studebaker had not become voluntarily unemployed or underemployed. Mr. Studebaker believed that he had acted reasonably to address a problematic situation with his subordinate, but his employer disagreed. There had been no other disciplinary issues during his employment, and he expressed surprise that he had been fired. There was no evidence to suggest that Mr. Studebaker provoked his termination in order to avoid paying child support or for any other reason. His new employment did not pay as well as the previous position, but there was no evidence to suggest that he was overqualified or underpaid at that position. The trial court did not abuse its discretion in refusing to impute additional income to Mr. Studebaker.

{¶ 35} The second assignment of error is overruled.

{¶ 36} The judgment of the trial court will be affirmed in part and reversed in part. The matter will be remanded for the trial court to fashion a visitation plan that is in the children's best interest, taking into account Ms. Studebaker's anticipated move to Texas, unless her plans to move have changed. Whether any revised visitation or custody order should affect a reevaluation of the appropriate child support calculation is a matter for the trial court.

. . . . . . . . . .

FAIN, J., concurs.

HALL, J., concurs in judgment.

Copies mailed to:

Robert N. Lancaster, Jr.
Todd D. Severt
Hon. Thomas J. Capper