[Cite as *Burks v. Burks*, 2018-Ohio-670.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| RUSSELL C. BURKS | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27734 |
| | : | |
| v. | : | Trial Court Case No. 14-UJ-4 |
| | : | |
| ANN M. BURKS | : | (Domestic Relations Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of February, 2018.

. . . . . . . . . . .

KEITH KEARNEY, Atty. Reg. No. 003191, 2160 Kettering Tower, 40 N. Main Street, Dayton, Ohio 45423
  Attorney for Plaintiff-Appellee

TYLER STARLINE, Atty. Reg. No. 0078552, 120 W. Second Street, Suite 333, Dayton, Ohio 45402
  Attorney for Defendant-Appellant

. . . . . . . . . . . .

HALL, J.

{¶ 1} Ann Burks appeals from an order of the domestic relations court that imposes a supervision requirement on her parenting time and increases her child-support obligation. Finding no error, we affirm.

## I. Background

{¶ 2} The parties, Ann and Russell Burks, were divorced in 2010 in Virginia. They have a son, born in November 2005. The Virginia court granted them joint custody of him, giving Mother primary physical custody.

{¶ 3} The Virginia divorce decree was registered in Montgomery County, Ohio. Afterwards, the parties filed numerous motions in the Montgomery County Domestic Relations Court concerning their son, and a guardian ad litem (GAL) for the child was appointed. A shared-parenting plan was adopted in December 2015 under which the parties would alternate time with the boy on a week-to-week basis. It was not long before each party moved to terminate shared parenting and reallocate parental rights and responsibilities.

{¶ 4} In August 2016, the magistrate granted the motions and terminated the shared-parenting plan, designating Father the child's residential parent and legal custodian. The magistrate adopted the domestic-relations court's Standard Order of Parenting Time but also retained the alternating week-to-week parenting time schedule. The magistrate also ordered Mother to pay $335 per month in child support. In calculating support using the support worksheet at that time, the magistrate credited each party with child-care expenses based on their testimony and gave Mother a deviation in child support based on the parenting-time allocation. Neither party filed objections, and the trial

court adopted the magistrate's decision.

{¶ 5} In September 2016, Father filed a motion asking the court to modify Mother's parenting time to reflect the parenting time in the Standard Order, purportedly due to Mother's exclusion from the child's daycare center as a result of alleged "disruptive behavior." The motion also asked the court to remove the child-support deviation and to allow Father, rather than Mother, to provide health insurance for the child. A hearing was held in January and February 2017 at which Father and the GAL testified about a number of issues and concerns that they had with Mother. Among these concerns was the belief that Mother had left the child home alone. Mother testified that, on occasion, when she had to briefly leave (never overnight), she would ask neighbors in her condo complex who the child knew to keep an eye out for him. Mother said that she believed that the child was mature enough to be left alone for short periods of time. Father testified that, in light of the child's behavioral problems and other issues, Father thought that the child should not be left alone. The GAL agreed. The magistrate denied Father's request to modify Mother's alternating week parenting time schedule. But the magistrate did order that when Mother has the child, she is not to leave him "without direct supervision."

{¶ 6} The magistrate treated the request to remove the child-support deviation as a request to modify child support. The magistrate found that Father's child-care costs had increased $6,500 per year based on Father's testimony that this was the yearly tuition for the daycare that he had enrolled the child in after shared parenting was ended and he obtained legal custody. The magistrate did not credit Mother with any child-care expenses, finding that she did not appear to have any, but did retain the child-support deviation. Using the support worksheet, the magistrate increased Mother's child-support

obligation to $571 per month. The magistrate also ordered that Father provide the child's health insurance.

{¶ 7} Both parties filed objections to the magistrate's decision. On August 25, 2017, the trial court overruled Father's objections, sustained one of Mother's objections, and overruled her other two objections. One of Mother's overruled objections concerned the supervision requirement. She argued that the requirement was ambiguous and overbroad. Although the court overruled Mother's objection, it attempted to clarify the requirement by ordering that Mother, or a babysitter, must "be present" with the child. The other of Mother's overruled objections concerned the increase in child support. The trial court concluded that the magistrate did not err by accepting Father's testimony as to the child-care tuition increase, and the court noted that Mother did not testify about her own child-care expenses.

{¶ 8} Mother appealed.

## II. Analysis

{¶ 9} Mother assigns two errors to the trial court, challenging the supervision requirement and challenging the increase in her child-support obligation.

### A. The supervision requirement

{¶ 10} The first assignment of error alleges that the trial court erred by imposing the supervision requirement on Mother. A trial court's decision on a motion to modify visitation rights is reviewed for abuse of discretion. *Quint v. Lomakoski*, 167 Ohio App.3d 124, 2006-Ohio-3041, 854 N.E.2d 225, ¶ 12 (2d Dist.). A court most often abuses its discretion if a decision is unreasonable, that is, no sound reasoning process supports the decision. *Id.*

{¶ 11} "Modification of visitation rights is governed by R.C. 3109.051." *Braatz v. Braatz*, 85 Ohio St.3d 40, 706 N.E.2d 1218 (1999), paragraph one of the syllabus. R.C. 3109.051(D) requires a trial court to "consider the fifteen factors enumerated therein, and in its sound discretion * * * determine visitation that is in the best interest of the child." *Id.* at paragraph two of the syllabus.

{¶ 12} Father alleged that Mother left the child at home alone and returned to work. Mother testified that she had left the child at home alone on a few occasions for an hour or so, after ensuring that her immediate neighbor was going to be home for the child to call, if necessary. She said that she believes that the child is mature enough to be home alone for short periods of time. The GAL testified that the child told him that Mother left him (the child) at home sometimes but that when he (the GAL) specifically asked Mother if she left the child at home alone she said no. The GAL was concerned that Mother was not being truthful with him.

{¶ 13} Mother objected that the magistrate's "direct supervision" requirement is ambiguous and overbroad and pointed out that there is no law in Ohio that sets a minimum age for a minor child to be left at home without supervision. She said that it is unclear what "direct supervision" means and it is unclear how long the order is to remain in effect. The trial court concluded that since Father is the custodial parent, his concern should be respected. Still, the court attempted to respond to Mother's concerns by attempting to clarify the magistrate's supervision requirement, ordering that

[Mother] shall either be present with [the child] while she is exercising her parenting time with him or have a babysitter present in her home with [the child] if she, [Mother], needs to leave or can't be with him. This provision

shall be in effect until [Father] believes [the child]'s maturity level is such that he can be left at home without someone present with him.

{¶ 14} Mother argues that the trial court failed to specify or expressly determine which statutory factors in R.C. 3109.051(D) that it relied on to justify imposing the supervision requirement. " 'A reviewing court will presume that the trial court considered relevant statutory factors in the absence of evidence to the contrary.' " *Quint*, 167 Ohio App.3d 124, 2006-Ohio-3041, 854 N.E.2d 225, at ¶ 12, quoting *Minoughan v. Minoughan*, 2d Dist. Montgomery No. 18089, 2000 WL 799737, *2 (Jun. 23, 2000), citing *Cherry v. Cherry*, 66 Ohio St.2d 348, 356, 421 N.E.2d 1293 (1981). The court here stated in its decision that it "carefully considered those factors in reaching its decision." And there is no evidence that the court failed to do so.

{¶ 15} The trial court reasonably found, based on the statutory factors, that the supervision requirement is in the child's best interest. One of the statutory factors is "[t]he age of the child," R.C. 3109.051(D)(4), and another is "[t]he health and safety of the child," R.C. 3109.051(D)(7), and yet another is "[t]he mental and physical health of all parties," R.C. 3109.051(D)(9). A court is also to consider "[a]ny other factor in the best interest of the child." R.C. 3109.051(D)(16). Here, Father is concerned with the child being at home alone because of the child's mental-health issues. The GAL testified that he too had concerns with Mother leaving the child home alone in light of the child's "fairly significant mental health issues" as well as Mother's apparent failure to be truthful with him about the matter. The trial court agreed that since Father, as custodial parent, is concerned, a requirement that Mother, or a babysitter, be present is justified until the child is mature enough to be at home alone.

**{¶ 16}** Mother also argues that the requirement is ambiguous. She says that the requirement does not give enough guidance as to what being "present" with the child means. She asks, for example, whether she would have to be with the child when he is outside playing, or whether she would have to follow the child if he were to go outside with a friend to play in the neighborhood. The issue that Mother raises is not one of ambiguity. Ambiguity would be a problem if "present" had more than one meaning. But that is not the case here. The issue that Mother actually raises is that of vagueness— whether the requirement applies in a certain situation. Vagueness is ubiquitous in the law, because it is not possible (or necessarily desirable), particularly in disputes relating to the care of children, to define every situation to which a law applies. (Take, for example, the legal concept of reasonableness.) It is left to courts to resolve borderline cases. Here, we believe that the trial court's supervision requirement is reasonable in its vagueness. And we believe that the trial court must be the one to determine whether its requirement applies in a particular situation.

**{¶ 17}** Mother also says that the court should have specified an age at which the child may be left home alone. The order states that the supervision requirement is to remain in effect until Father believes that the child is mature enough to be left alone at home. There is no way to know when this will be. It could be a year from now or it might not be until the child is 17 years old. We do not think that it was unreasonable of the trial court to give Father discretion to decide when the child is sufficiently mature, or for the trial court to re-visit the issue at an appropriate time.

**{¶ 18}** Finally, we fail to see how the requirement could be called arbitrary. Father has concerns, shared by the GAL, about the child being at home alone. The supervision

requirement is a reasonable response to those concerns.

{¶ 19} The first assignment of error is overruled.

## B. The increase in child support

{¶ 20} The second assignment of error alleges that the trial court erred by increasing Mother's child-support obligation.

{¶ 21} By statute, if a party asks a court to modify child support, "the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet." R.C. 3119.79(A). And if the recalculated amount is more than ten percent greater than the current amount, *id.*, and "was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order," R.C. 3119.79(C), the child-support obligation must be modified, *id.*, "unless the court determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child," *id.*

{¶ 22} Here, Mother had been given a deviation in her child-support obligation to compensate for the alternating week-to-week parenting-time allocation. In his motion, Father, in addition to asking the court to modify parenting time, asked the court to remove the child-support deviation. If Mother's parenting time were to be based on the Standard Order of Parenting Time, the reduction in child support would no longer be justified.

{¶ 23} The trial court denied Father's request to modify parenting time. But following the magistrate's lead, the court treated his request to remove the child-support deviation as a request to modify child support. Adopting the magistrate's support

worksheet, the court credited Father with $6,500 in annual child-care expenses, credited Mother with no child-care costs, and retained the child-support deviation. The changes in the child-support worksheet caused Mother's monthly child-support obligation to increase from $335 to $571.

{¶ 24} Mother seems to think that the court did not have authority to modify her child-support obligation. She points out that Father's motion predicates his request to modify child support on his request to modify parenting time. Because the court did not modify parenting time, says Mother, it should not have recalculated child support. Mother raised this issue in her objections, but the trial court did not address it. Nevertheless, we do not see reversible error. Father requested that the child-support deviation be removed and that he provide health insurance for the child instead of Mother. Both of these affect the support calculation in the support worksheet. Also, Father testified that after he obtained legal custody of the child, his child-care expenses changed. Both parties knew that child support would be an issue at the hearing and had an opportunity to present evidence on the issue. We cannot say that the trial court erred by recalculating child support based on the parties' current situation.

{¶ 25} Mother contends that the trial court should not have credited Father with the full $6,500 daycare expense because he failed to present corroborating evidence. She says that Father's unsubstantiated testimony is not sufficient. Mother points out that the August 2016 support worksheet credits Father with only $1,900 in annual child-care expenses. At the hearing on the present dispute, though, Father testified that the cost to send the child to the daycare that Father had chosen had risen to $6,500 per year. Father said that he has to pay the full cost even if Mother does not send the child to that facility

when he is with her. No other evidence was presented as to the costs of daycare. The trial court concluded that the magistrate had properly accepted Father's testimony about the tuition increase without supporting documentation. We agree. Mother did not present contradicting evidence. Nor did she cross-examine Father on the amount. The trial court was entitled to accept Father's testimony about his expenses and credit him with the full amount.

{¶ 26} Lastly, Mother contends that the trial court failed to credit her with any child-care expenses. In her brief, she says only that the trial court "erred by implicitly finding that Mother no longer had any daycare expenses." The August 2016 support worksheet credits Mother with annual child-care expenses, but the magistrate found that she "does not appear to have her own child care cost now." The trial court noted that "[t]here was no testimony from [Mother] as to her childcare expenses." Despite knowing that child support would be an issue at the hearing, Mother presented no evidence of any child-care expenses. And even if she had, the court could have considered whether using an alternate facility was a matter of her voluntary choice. From the record of the hearing, the court had no basis on which to find that she currently has any such expenses.

{¶ 27} The second assignment of error is overruled.

### III. Conclusion

{¶ 28} We have overruled both assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Keith Kearney
Tyler Starline
Hon. Timothy D. Wood