**[Cite as *Purohit v. Purohit*, 2022-Ohio-4628.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

SANDEEP PUROHIT                                  :
                                                 :
    Plaintiff-Appellant                      :      Appellate Case No. 29477
                                                 :
v.                                               :      Trial Court Case No. 2019-DR-00228
                                                 :
POOJA PUROHIT                                    :      (Domestic Relations Appeal)
                                                 :
    Defendant-Appellee                       :
                                                 :

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of December, 2022.

. . . . . . . . . . .

DALMA C. GRANDJEAN, Atty. Reg. No. 0024841 and JAMES D. MILLER, Atty. Reg. No. 0080357, One South Main Street, Suite 1590, Dayton, Ohio 45402
    Attorneys for Plaintiff-Appellant

KEITH R. KEARNEY, Atty. Reg. No. 0003191, 40 North Main Street, Suite 2160, Dayton, Ohio 45423
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Plaintiff-Appellant, Sandeep Purohit, appeals from a judgment concluding that Defendant-Appellee, Pooja Purohit, was entitled to the trial court's standard order of parenting time with the parties' minor child, S.P.[1] According to Sandeep, the court abused its discretion by abruptly transitioning parenting time from four hours a week to the standard order of parenting time. Sandeep further contends that the trial court failed to consider S.P.'s safety and welfare.

**{¶ 2}** After reviewing the record, we find no abuse of discretion or error on the trial court's part. The court's decision was supported by sound reasoning. Consequently, Sandeep's sole assignment of error will be overruled, and the judgment of the trial court will be affirmed.

I.   Facts and Course of Proceedings

**{¶ 3}** On March 27, 2019, Sandeep filed a complaint seeking a divorce from Pooja. According to the complaint, the parties had one child, S.P., who had been born in August 2016. In the complaint, Sandeep sought temporary and permanent custody of S.P. On March 29, 2019, Pooja filed an answer and counterclaim for divorce and also asked for legal and residential custody of S.P. On the same day, the case was transferred from Judge Wood to Judge Cross, because a prior domestic violence civil protection order case (Montgomery D.R. No. 2018-DV-1687) involving the parties had previously been assigned to Judge Cross.

---

[1] Because the parties have the same last name, we will refer to them by their first names.

{¶ 4} On May 1, 2019, the trial court filed an order granting temporary custody of S.P. to Sandeep, with visitation given to Pooja in accordance with what had been ordered in the domestic violence case. The court then appointed a guardian ad litem ("GAL") for S.P. on May 10, 2019. The court also filed an order in June 2019, stating that Pooja would have supervised visitation with S.P. at Erma's House. On September 6, 2019, the court appointed a psychologist to perform a psychological evaluation regarding S.P.'s best interests.

{¶ 5} After holding a number of hearings, the trial court filed a final judgment and decree of divorce on May 21, 2021. The degree was the result of an agreement between the parties. *See* Magistrate Order (Apr. 6, 2021), p.1.

{¶ 6} Before the decree was filed, Pooja filed a motion for contempt on April 19, 2021, based on a visitation that occurred on April 10, 2021. Sandeep responded with a motion to dismiss the contempt motion, claiming that no parenting time requirements were in place at the time of the alleged contempt because the divorce decree had not yet been filed. The motion to dismiss also alleged that Sandeep had not been properly served with the contempt motion. The court set a contempt hearing for May 19, 2021, but later continued it to August 2, 2021, since the divorce decree provided for reappointment of the GAL and for a 90-day review hearing concerning parenting time.

{¶ 7} Under the terms of the divorce decree, Sandeep was to be S.P.'s legal custodian and residential parent, and Pooja was to have phased-in parenting time beginning April 10, 2021, as follows: for four weeks, parenting time would be for one hour on Wednesdays at Erma's house and from 12:00 p.m. to 3:00 p.m. on Saturdays at a

local park, weather permitting; otherwise, the parenting time would occur at an agreed-upon public location.   After the first phase was complete, another four-week phase would take place.   During that time, Pooja would have the same parenting time at Erma's House, plus four hours of parenting time at the YWCA facility where she then lived, with staff to be present at all times.   The third phase outlined four more weeks of time during which Pooja would have the same parenting time at Erma's House, and four hours of parenting time on Tuesdays and Thursdays at the YWCA facility, again with staff being present.

{¶ 8} The GAL was to be reappointed and would provide a report on parenting time.   This report was to be filed seven days before a 90-day review hearing on visitation.   In addition, to facilitate an appropriate mother-child relationship, Dr. Cordell would conduct another parenting assessment during the phased-in parenting time.   Counseling with Pooja and S.P. would also take place during Pooja's scheduled parenting time.   While Pooja was the child support obligor, her support was suspended until further order because Pooja did not have a work permit and was not allowed to work in the United States.

{¶ 9} The contempt hearing and parenting review were later rescheduled to October 7, 2021, and a magistrate held a hearing on that date.   On November 23, 2021, the magistrate filed a decision dismissing the contempt charge and discontinuing supervised parenting time at Erma's House.   Pooja was given parenting time on Wednesdays after school until 5:30 p.m.   Beginning December 4, 2021, Pooja was to have parenting time every other weekend from 8:30 a.m. until 4:30 p.m. on Saturday, and

on the following Sunday, was to have parenting time from 8:30 a.m. to 4:30 p.m.

{¶ 10} Beginning January 4, 2022, Pooja's parenting time would be expanded to Saturday at 8:30 a.m., through Sunday at noon (in other words, Pooja would keep S.P. overnight). This schedule would continue until January 16, 2022. Beginning January 28, 2022, Pooja was allowed to have parenting time pursuant to the court's standard order of parenting time (generally every other weekend from Friday evening until Sunday, and at other listed times covering holidays and summer vacation).

{¶ 11} On December 3, 2021, Sandeep filed objections to the magistrate's decision and a request to file supplemental objections after the hearing transcript was filed. The court granted this request on December 8, 2021. On December 8, 2021, Pooja filed a motion for an interim parenting time order.

{¶ 12} The magistrate then filed an interim order on January 7, 2022, noting that the filing of objections had stayed the orders in the November 23, 2021 decision. The magistrate, therefore, gave Pooja parenting time on Wednesdays from after school until 5:30 p.m., and on every other weekend from 8:30 a.m. to 4:30 p.m. on both Saturday and Sunday. No overnight parenting time was included.

{¶ 13} On February 21, 2022, Sandeep filed supplemental objections, and Pooja responded. On April 19, 2022, the court filed an entry extending the interim parenting order for an additional twenty-eight days. Then, on April 26, 2022, the court filed a decision and judgment overruling Sandeep's objections to the magistrate's decision. The court also modified the parenting order, stating that Pooja would have parenting time on Wednesdays after school until 5:30 p.m. Then, beginning on May 7, 2022, Pooja

would have parenting time on Saturday at 8:30 a.m. and the time would continue until the following Sunday at noon (an overnight stay). Decision and Judgment ("Decision") (Apr. 26, 2022), p. 8-9. Beginning June 4, 2022, Pooja would be entitled to the court's standard order of parenting time. *Id.* at p. 9.

{¶ 14} On May 18, 2022, Sandeep timely appealed from the court's judgment.

## II. Modification of Parenting Time

{¶ 15} Sandeep's sole assignment of error states that:

> The Trial Court's Extension of Visitation to Pooja Was Against the
> Manifest Weight of the Evidence, Contrary to Law, an Abuse of Discretion,
> and Not in the Child's Best Interest.

{¶ 16} Under this assignment of error, Sandeep makes several arguments. First, he contends that the trial court should not have implemented the standard order of parenting time because the divorce degree, GAL's report, and interim orders did not contemplate overnight parenting time. In this regard, Sandeep focuses on several factors, including (1) the finding in the domestic violence case that Pooja had engaged in domestic violence against S.P. resulting in a civil protection order; (2) the tenuous bond between Pooja and S.P.; and (3) the abrupt "transition from a limited four-hour, supervised interaction to an entire weekend and during the summer to an entire week together, especially when the mother had not cared for the child alone since prior to the issuance of the ex parte Civil Protection Order in December 2018." Appellant's Brief at p. 9-10.

**{¶ 17}** Sandeep has also expressed concern about Pooja's residence in a group home and the fact that no inspection was done to ensure the facility was safe and suitable for the child. *Id.* at p. 10. Additionally, he has voiced concern over transient residents in the group home and the court's lack of knowledge about them.

**{¶ 18}** When parenting matters are at issue, R.C. 3109.051(C) requires courts to consider all relevant factors, "including, but not limited to" the factors in R.C. 3109.051(D). The factors in R.C. 3109.051(D) include "a child's relationships with her parents and siblings; the geographical locations of the parents' residences; the child's and parents' available time; the child's age; the child's adjustment to home, school, and community; the health and safety of the child; the amount of time the child will spend with siblings; and the mental and physical health of all concerned." *Gisslen v. Gisslen*, 2d Dist. Montgomery No. 24414, 2011-Ohio-3105, ¶ 27, citing R.C. 3109.051(D).

**{¶ 19}** Furthermore, reviewing courts " 'will presume that the trial court considered relevant statutory factors in the absence of evidence to the contrary.' " *Quint v. Lomakoski*, 167 Ohio App.3d 124, 2006-Ohio-3041, 854 N.E.2d 225, ¶ 12 (2d Dist.), quoting *Minoughan v. Minoughan*, 2d Dist. Montgomery No. 18089, 2000 WL 799737 (June 23, 2000).

**{¶ 20}** Decisions on parenting matters are made in the trial court's "sound discretion." *Braatz v. Braatz*, 85 Ohio St.3d 40, 45, 706 N.E.2d 1218 (1999). As a result, "[w]e will not reverse a trial court's decision on a motion for modification of visitation rights absent an abuse of discretion." *Quint* at ¶ 12, citing *Archer v. Archer*, 4th Dist. Pickaway No. 96 CA 37, 1997 WL 600233 (Sept. 24, 1997). An abuse of discretion

" 'implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "[M]ost instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 21} In addition, "we will presume, as we must, that the trial court's factual findings are correct." *Shoenfelt v. Schoenfelt*, 2d Dist. Montgomery No. 23497, 2009-Ohio-6594, ¶ 9, citing *Quint* at ¶ 12. The reason for this deferential review "is that the trial judge has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). In *Davis*, the court further remarked that " '[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not.' " *Id.* at 419, quoting *Seasons Coal Co. v. City of Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984).

{¶ 22} As an initial point, the parties agreed in the divorce decree to a phased-in approach to parenting time and to a review of parenting time in 90 days. If the original phased-in approach went well and no problems occurred, one would assume that Pooja's parenting time would increase after the review hearing.

**{¶ 23}** For various reasons, the review hearing did not take place in 90 days; instead, it occurred on October 7, 2021, almost five months after the divorce decree was filed. One witness at the hearing was a former director of children services for Goodwill Easter Seals who had observed Pooja's parenting time with S.P. from April 2021 to August 2021. The witness stated that the visits had gone well. Transcript of Proceedings ("Tr."), p. 5-7. Pooja and S.P. had engaged normally and the witness had not observed anything that made her concerned for the child's welfare. *Id.* at p. 8.

**{¶ 24}** More importantly, Sandeep's own testimony reveals his agreement with the GAL's suggestion for phasing in parenting time. During direct examination by Sandeep's attorney, the following exchange occurred:

Q. Okay. And – umm – have you in preparation for this hearing, reviewed the recommendations that were made by the Guardian ad Litem?

A. I have reviewed.

Q. Do you agree with those recommendations?

A. Yes.

Q. Do you believe they are in [S.P.'s] best interest?

A. Correct.

Q. Specifically, in terms of the parenting time for [S.P.'s] mom, you believe that it's in [S.P.'s] best interest that for the first few weeks, she gets four hours of parenting time a week.

MR. KEARNEY: Your Honor, the Guardian ad Litem Report, speaks for itself. We don't even need to go through the report.

THE COURT: Overruled. You may proceed.

MR. MILLER: Thank you, your Honor.

CONTINUED EXAMINATION BY MR. MILLER:

Q. Do you believe it is in [S.P.'s] best interest that after that period is concluded that Pooja have parenting time with [S.P.] for an eight hour period a week?

A. Yes.

Q. All right. After that period of time concludes, do you believe that it's in [S.P.'s] best interest for Pooja's parenting time to become two consecutive days on alternating weeks with no oversight?

A. Correct.

Q. Do you believe it's in [S.P.'s] best interest at that point for a mid-week visit for just a few hours to be appropriate and in her best interest?

A. Yes.

Q. And then do you believe that it would be in [S.P.'s] best interest, after that time for the two consecutive day visits, to be linked by an overnight?

A. Yes.

Tr. at p. 41-42.

{¶ 25} After the hearing, the magistrate considered all the statutory factors and decided that it would be in S.P.'s best interest for Pooja to have parenting time on a phased-in basis beginning on December 4 with eight hours on two days every other

weekend, with no overnight visits. After that schedule lasted for a month, Pooja would have slightly increased time every other week, with an overnight stay. At the point where nearly two months was completed, Pooja would then receive the standard order for parenting time. Magistrate Decision (Nov. 23, 2021), p. 4-8.

{¶ 26} In its decision on the objections, the trial court noted that the GAL had also recommended a phase-in schedule, " 'so that shortly after the holidays Mother might be enjoying more of a traditional Standard Order arrangement.' " Decision and Judgment (Apr. 26, 2022), at p. 6, quoting GAL's recommendation. The court commented that while the magistrate's schedule was not identical to that of the GAL, the court did not have to follow a GAL's recommendations and could deviate where it felt appropriate. *Id.*

{¶ 27} We agree with the trial court. As a general rule, a guardian ad litem's role "is to investigate the ward's situation and then to ask the court to do what the guardian feels is in the ward's best interest." *In re Baby Girl Baxter*, 17 Ohio St.3d 229, 232, 479 N.E.2d 257 (1985). However, " '[a] trial court is not bound to follow a guardian ad litem's recommendation.' " *Bomberger-Cronin v. Cronin*, 2d Dist. Greene No. 2014-CA-4, 2014-Ohio-2302, ¶ 27, quoting *Lumley v. Lumley*, 10th Dist. Franklin No. 09AP-556, 2009-Ohio-6992, ¶ 46. "As the fact finder, the trial court determines the guardian ad litem's credibility and the weight to be given to the guardian ad litem's recommendation." *Id.*

{¶ 28} Our review of the record indicates that the magistrate's schedule was not substantially different than what the GAL recommended. Furthermore, contrary to Sandeep's claim, nothing happened "abruptly." The magistrate's decision was issued on November 23, 2021. However, no changes were actually made in the existing

parenting schedule until January 7, 2022, when the magistrate filed an interim order.

**{¶ 29}** The reason for the delay was that Sandeep had filed objections to the magistrate's decision, which prevented the recommended parenting time from being imposed. When the interim order was filed in January 2022, the magistrate did not order any overnight visitation. This interim schedule persisted for several months, until the trial court's April 26, 2022 decision on the objections. And, even then, the court did not immediately impose the standard parenting time order; instead, it ordered one overnight stay every other weekend for a month, at which time the standard parenting order of parenting time would apply. Decision (Apr. 26, 2022), at p. 8-9.

**{¶ 30}** Given these facts, Sandeep's assertion of an inappropriate "transition from a limited four-hour, supervised interaction to an entire weekend and during the summer to an entire week together" is factually incorrect. From early January through the end of April 2022, Pooja had 16 hours (over two days) of unsupervised parenting time every other week. Pooja also had unsupervised mid-week parenting time every week from January through April.

**{¶ 31}** Furthermore, when the court issued its judgment on the objections, Pooja still did not receive an entire weekend of parenting time. Pooja received two days that included only one overnight stay (as opposed to the two overnight stays the standard order allowed), and she did this for a month before receiving an entire weekend. Nothing was abrupt about this situation.

**{¶ 32}** As an additional matter, Sandeep testified at the parenting hearing and said nothing about the condition of the group home. He also did not express any concerns

about S.P.'s health, safety, and welfare. Sandeep had the chance to present witnesses and to testify himself about these concerns, yet he did nothing. Finally, the domestic violence situation (whatever it was, and that is not evident from the record before us) occurred several years before Pooja's unsupervised parenting time was reinstated. There was no evidence that anything negative had occurred in the interim. Again, Sandeep could have addressed this during the review hearing or could have presented evidence. He chose not to do so.

{¶ 33} Accordingly, the trial court's parenting time decision was not an abuse of discretion, nor has Sandeep established any other error. Sandeep's sole assignment of error, therefore, is overruled.

### III. Conclusion

{¶ 34} Sandeep's assignment of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and LEWIS, J., concur.

Copies sent to:

Dalma C. Grandjean
James D. Miller
Keith R. Kearney
Hon. Denise L. Cross